T.C. Memo. 2006-104

UNITED STATES TAX COURT

KENNETH A. SAPP, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5759-02L.                    Filed May 15, 2006.

Kenneth A. Sapp, pro se.

<u>Veena Luthra</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>: Pursuant to section[1] 6330(d)(1), petitioner
seeks review of respondent's determination to proceed with a levy
to collect petitioner's Federal income tax liabilities for

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as in effect for the taxable
years in issue.

taxable years 1990, 1991, 1992, 1993, and 1996.  We hold that respondent may proceed with collection.

FINDINGS OF FACT

At the time he filed the petition, petitioner resided in Powhatan, Virginia.

Petitioner filed a Federal income tax return for 1990, received by respondent on August 21, 1991, that reported tax due of $2,988.  Respondent assessed the reported tax, as well as additions to tax under sections 6651(a)(1), 6651(a)(2), and 6654, and interest (collectively, the 1990 liability).  The 1990 liability was unpaid at the time of trial.

Petitioner filed a Federal income tax return for 1991, received by respondent on June 7, 1993, that reported tax due of $12,142.  Respondent assessed the reported tax, as well as additions to tax under sections 6651(a)(1), 6651(a)(2), and 6654, and interest (collectively, the 1991 liability).  The 1991 liability was unpaid at the time of trial.

On August 2, 1993, petitioner filed a Chapter 7 bankruptcy petition, and was granted a discharge on November 15, 1993.

Petitioner filed a Federal income tax return for 1992, received by respondent on June 10, 1994, that reported tax due of $6,071.  Petitioner had received an extension to file this return until August 15, 1993.  Respondent assessed the reported tax, as well as additions to tax under sections 6651(a)(1), 6651(a)(2),

and 6654, and interest (collectively, the 1992 liability).  Aside from a withholding credit of $42 and a payment of $800, the 1992 liability was unpaid at the time of trial.

Petitioner filed a Federal income tax return for 1993, received by respondent on June 10, 1994, that reported tax due of $9,142.  Respondent assessed the reported tax, as well as additions to tax under sections 6651(a)(1), 6651(a)(2), and 6654, and interest (collectively, the 1993 liability).  The 1993 liability was unpaid at the time of trial.

On March 5, 1997, respondent received from petitioner a Form 1040, U.S. Individual Income Tax Return, for 1996 with zeros in all entries and an attached statement containing frivolous tax protester arguments.[2]  Respondent treated the Form 1040 as a frivolous return and assessed a frivolous return penalty under section 6702 on June 29, 1998.

On March 31, 1997, respondent received a Form 1040X, Amended U.S. Individual Income Tax Return, from petitioner for 1993 with zeros in all entries in the "Correct amount" column and an attached statement substantially identical to the one attached to the 1996 Form 1040.  On April 1, 1997, respondent received similar Forms 1040X from petitioner for 1990 and 1991.

---

[2] The arguments included, e.g., "no Code section makes me 'liable' for income taxes" and "'income' * * * can only be a derivative of corporate activity", as well as out-of-context quotations from case law, statutes, and regulations.

Respondent treated the Forms 1040X for 1990 and 1991 as claims for refund which he formally disallowed as untimely by letter on April 25, 1997. Respondent treated the Form 1040X for 1993 as a frivolous return and assessed a frivolous return penalty under section 6702 on October 27, 1997.

Respondent issued a notice of deficiency to petitioner for 1996 on June 5, 1998, determining a deficiency in income tax of $7,405, as well as additions to tax under sections 6651(a)(1) and 6654. No petition was filed in response to the notice of deficiency, and respondent assessed the amounts determined in the notice, as well as interest (collectively, the 1996 liability), on November 9, 1998. The 1996 liability was unpaid at the time of trial.

On March 7, 2001, a Letter 1058, Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing, was mailed to petitioner concerning the 1990, 1991, 1992, 1993, and 1996 liabilities. Petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, for all of the aforementioned liabilities. Petitioner's Form 12153 also requested a hearing with respect to notices of Federal tax lien filing regarding the foregoing liabilities.

By letter dated July 9, 2001, the Office of Appeals (Appeals) notified petitioner that his request had been assigned to Appeals officer Lawrence Ford (AO Ford) and requested that

petitioner submit completed Forms 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and 433-B, Collection Information Statement for Businesses, as well as completed Federal income tax returns for 1996 through 2000, by August 3, 2001. When petitioner had not responded by September 13, 2001, AO Ford sent him a letter on that date scheduling a conference for October 9, 2001, to which petitioner was requested to bring the foregoing materials.

Petitioner did not appear at the scheduled conference or otherwise respond. On February 5, 2002, Appeals issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) to petitioner, in which it was determined that the levy should proceed because petitioner had failed to attend the scheduled conference or otherwise respond to contacts by the Appeals officer. The notice of determination further observed that the 1990, 1991, 1992, and 1993 liabilities were based on returns filed for those years, and the 1996 liability was based on information respondent had on file.

Petitioner timely petitioned this Court for review, alleging the following errors: (i) The notice of determination did not state that AO Ford had no prior involvement with respect to the tax periods at issue; (ii) the notice of determination did not contain a verification that the requirements of applicable laws

and administrative procedures had been met; (iii) no notice and demand for payment was received for any of the liabilities at issue; (iv) petitioner had not received a notice of deficiency for any of the years at issue; (v) AO Ford abused his discretion in failing to hold a hearing before making the determination; and (vi) AO Ford did not analyze whether the proposed collection activity balanced the need for the efficient collection of taxes with petitioner's legitimate concern that any collection activity be no more intrusive than necessary.

In response to the petition, respondent's Office of Chief Counsel referred petitioner's case back to Appeals on July 24, 2002, in order to address the allegations in the petition and to prepare a supplemental notice of determination. The attorney in respondent's Office of Chief Counsel who was assigned to petitioner's case collaborated with Appeals employees to develop the supplemental notice of determination. The first contact between Appeals and Chief Counsel occurred on July 24, 2002, after petitioner's case had been docketed in this court. On May 1, 2003, Appeals issued to petitioner a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (2003 supplemental determination).[3]

---

[3] After receiving the 2003 supplemental determination, petitioner filed a motion to dismiss for lack of jurisdiction on the grounds that the notice of determination was invalid, as evidenced by respondent's effort to augment it with the 2003

(continued...)

On July 2, 2003, respondent filed a motion for summary judgment. On August 29, 2003, however, respondent, conceding that genuine issues of material fact remained in the case, sought leave to withdraw the motion and, conceding that issuance of the 2003 supplemental determination was improper once this Court had obtained jurisdiction, also requested that the Court remand the case to Appeals in order to hold a hearing with petitioner and issue a "proper" supplemental notice of determination. On September 2, 2003, we granted respondent's motion to withdraw his motion for summary judgment and remanded the case to Appeals for the purpose of affording petitioner a hearing under section 6330.

Petitioner's case was assigned to a new Appeals employee, K.C. Waters (Settlement Officer Waters), who contacted petitioner by letter on several occasions in an effort to schedule a conference. In two of the letters, Settlement Officer Waters also requested that petitioner submit a collection information statement and returns for those years in which petitioner had not filed. After petitioner repeatedly failed to appear for scheduled conferences (citing, inter alia, his desire to submit a Freedom of Information Act request and to obtain counsel), this

---

[3](...continued)
supplemental determination. This Court denied the motion, Sapp v. Commissioner, T.C. Memo. 2003-207, holding that the notice of determination embodied a determination to proceed with the collection of the taxes in issue and was therefore sufficient for purposes of our jurisdiction.

Court by order set a deadline of January 30, 2004, for completion of the hearing, which was subsequently extended to March 1, 2004. A conference was thereupon scheduled for March 1, 2004. Prior to the conference, Settlement Officer Waters advised petitioner that, notwithstanding respondent's previous unwillingness to consider challenges to the underlying liabilities that had been self-assessed, such challenges would now be considered in light of <u>Montgomery v. Commissioner</u>, 122 T.C. 1 (2004).[4] Petitioner did not appear for the conference, sending instead a letter to Settlement Officer Waters which stated that it should constitute petitioner's appearance (absentee letter).

In the absentee letter, petitioner: (i) Objected to the participation of a second Appeals officer in a previous conference,[5] on the grounds that the second Appeals officer would improperly influence the determination; (ii) contended that he did not receive any notice of deficiency for 1996 and was consequently entitled to dispute his underlying tax liability for that year; (iii) expressed a desire to dispute his underlying

---

[4] Although respondent's records indicated that petitioner had filed a return for 1992 on June 10, 1994, Appeals was initially unable to locate the return. However, on Oct. 23, 2003, petitioner's 1992 return was obtained by Appeals, and a copy was forwarded to petitioner on Oct. 27, 2003, along with the entire contents of his administrative file.

[5] Petitioner had attended a meeting with Appeals personnel in December 2003 that was suspended when petitioner insisted that he be permitted to obtain counsel before proceeding further.

liabilities for 1990, 1991, and 1993, acknowledged the Appeals officer's willingness to let him do so but stated it would nonetheless be futile, and addressed the liabilities only by contending that he owed "but a small fraction" of the amounts sought to be collected; (iv) contended that he had not filed a return for 1992 and consequently was entitled to receive a notice of deficiency before the underlying liability for that year could be assessed or collected; (v) raised questions concerning collection alternatives; (vi) contended that the notice of determination was invalid and the 2003 supplemental notice was improper; (vii) contended that improper ex parte contacts occurred between respondent's Office of Chief Counsel and Appeals after his case was remanded by this Court for a hearing; and (viii) contended that Appeals failed to take steps to have references to petitioner as a "tax protester" expunged from respondent's files.

On March 3, 2004, Settlement Officer Waters issued a supplemental notice of determination (2004 supplemental determination) that (i) contained a verification that all applicable laws and administrative procedures had been met, (ii) considered the issues raised by petitioner, (iii) found that a balancing of the need for efficient tax collection with legitimate concerns that the collection action be no more intrusive than necessary indicated the proposed levy was

appropriate, and (iv) concluded that the proposed levy should be sustained. While considering petitioner's case during 2003 and 2004, Settlement Officer Waters communicated with the Chief Counsel attorney assigned thereto on numerous occasions.

A trial was conducted at which petitioner testified and agreed to the introduction of various documents from his administrative file.

OPINION

Background

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to any unpaid tax only if the Secretary has given written notice to the taxpayer 30 days before the levy. Section 6330(a) requires the Secretary to send a written notice to the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a section 6330 hearing at least 30 days before any levy is begun.

If a section 6330 hearing is requested, the hearing is to be conducted by an officer or employee of the Commissioner's Office of Appeals who has had no prior involvement with respect to the unpaid taxes at issue before the hearing. Sec. 6330(b)(1), (3). The Appeals officer or employee shall at the hearing obtain

verification that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(2). The taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy". Sec. 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability at a hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B). The underlying tax liability that may be challenged includes amounts reported as due on a return. Montgomery v. Commissioner, supra at 1.

At the conclusion of the hearing, the Appeals officer or employee must determine whether and how to proceed with collection and shall take into account (i) the verification that the requirements of any applicable law or administrative procedure have been met, (ii) the relevant issues raised by the taxpayer, (iii) challenges to the underlying tax liability by the taxpayer, where permitted, and (iv) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

We have jurisdiction to review the Appeals officer's determination where we have jurisdiction over the type of tax

involved in the case. Sec. 6330(d)(1)(A); see <u>Iannone v. Commissioner</u>, 122 T.C. 287, 290 (2004). Generally, we may consider only those issues that the taxpayer raised during the section 6330 hearing. See sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.; see also <u>Magana v. Commissioner</u>, 118 T.C. 488, 493 (2002). Where the underlying tax liability is properly at issue, we review the determination de novo. E.g., <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for abuse of discretion. <u>Id.</u> at 182. Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law. See <u>Freije v. Commissioner</u>, 125 T.C. 14, 23 (2005); <u>Ansley-Sheppard-Burgess Co. v. Commissioner</u>, 104 T.C. 367, 371 (1995).

<u>2004 Supplemental Determination</u>

In the petition, petitioner alleged certain infirmities in the initial notice of determination, including respondent's failure to: (i) Provide a hearing; (ii) verify satisfaction of the requirements of applicable laws or administrative procedures; (iii) state that the Appeals employee making the determination had no prior involvement with the liabilities at issue; and (iv) balance the needs of efficient collection against petitioner's legitimate concerns that the collection action be no more intrusive than necessary. We conclude that these issues are now

moot, in that this case was remanded to Appeals subsequent to the petition's filing, at respondent's request, for the purpose of affording petitioner a hearing, and the resulting 2004 supplemental determination contained the verification, no prior involvement, and balancing findings required by section 6330(b)(3), (c)(3)(A) and (C). Nonetheless, in his statement offered at trial petitioner persists in arguing that respondent's issuance of the initial notice of determination was an abuse of discretion entitling petitioner to a decision in his favor. As petitioner puts it, respondent's position in this case amounts to a cry of "Mulligan!" and seeks an "impermissible 'do over'".

We disagree. In appropriate circumstances we may remand a case to the Appeals office to provide a hearing under section 6330(b). See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Butti v. Commissioner, T.C. Memo. 2006-66; Harrell v. Commissioner, T.C. Memo. 2003-271. Since, as more fully discussed below, petitioner has been accorded all prelevy rights to which he is entitled under section 6330, his effort to exploit

possible infirmities[6] in the initial notice of determination is unavailing in the circumstances of this case.

Challenges to Underlying Liabilities

With respect to the 1990-1993 liabilities, petitioner claimed in his hearing request that the "numbers are completely wrong". Respondent conceded prior to the March 1, 2004, conference offered petitioner that petitioner was entitled to dispute the underlying liabilities even though reported on returns filed for those years.[7] See Montgomery v. Commissioner, 122 T.C. at 1. In the absentee letter, petitioner contended that he owed only a small fraction of the amounts respondent sought to collect, but he offered no specific grounds of dispute. The 2004 supplemental determination considered both the returns and the

---

[6] Since respondent sought a remand in order to offer petitioner a hearing subsequent to the petition's filing, we express no opinion whether sec. 6330 required respondent to do so in this case, given petitioner's failure to respond to Appeals Officer Ford's Sept. 13, 2001, letter offering a hearing. Cf., e.g., Taylor v. Commissioner, T.C. Memo. 2004-25 (hearing requirement satisfied where taxpayer fails to avail herself of reasonable opportunity for hearing), affd. 130 Fed. Appx. 934 (9th Cir. 2005).

[7] Petitioner also complains that he did not receive a notice of deficiency with respect to these liabilities. However, as the taxes were reported as due on petitioner's returns, no notice of deficiency was necessary to assess them. See sec. 6201(a)(1).

Petitioner at various times claimed that he had not filed a return for 1992. Respondent was initially unable to locate petitioner's 1992 return, but eventually did so and provided a copy to petitioner prior to the conference scheduled for Mar. 1, 2004. See supra note 4. We are satisfied on the basis of the record that petitioner filed a return for 1992 in which he reported as due the tax assessed by respondent.

amended returns filed by petitioner for 1990-1993, concluding that the amended returns were frivolous and that petitioner had shown no basis for modifying the tax shown as due on the originally submitted returns. At trial, petitioner was evasive regarding the source of his income and claimed that his income was not in any event taxable because he had merely received money in exchange for labor.

Petitioner has advanced only unspecified or frivolous challenges to his underlying tax liabilities (including the additions to tax) for 1990 through 1993. We accordingly conclude that the underlying liabilities are correct.

With respect to the underlying liability for 1996, at trial and in his request for a hearing, petition, and absentee letter, petitioner maintained that he did not receive a notice of deficiency for 1996 and sought to contest the underlying liability for that year. Respondent maintains that petitioner is precluded from challenging the underlying liability for 1996 under section 6330(c)(2)(B) because he received a notice of deficiency for that year.

To counter petitioner's denial that he received the notice of deficiency for 1996, respondent points to the fact that the notice was addressed to petitioner at his current address, an address where petitioner indisputably received other IRS correspondence, because that correspondence was responded to by

petitioner.  Respondent argues that the foregoing constitutes "evidence that respondent sent petitioner a notice of deficiency for * * * 1996" and "evidence that petitioner likely received it."

Section 6330(c)(2)(B) contemplates actual receipt of the notice of deficiency by the taxpayer, Tatum v. Commissioner, T.C. Memo. 2003-115, although a taxpayer cannot defeat actual receipt by deliberately refusing delivery, Sego v. Commissioner, 114 T.C. 604, 610-611 (2000).  The Commissioner has generally prevailed in foreclosing challenges to the underlying liability pursuant to section 6330(c)(2)(B) where there is evidence that a notice of deficiency was mailed to the taxpayer and no factors are present that rebut the presumption of official regularity and of delivery.  See, e.g., id.; Figler v. Commissioner, T.C. Memo. 2005-230; Kubon v. Commissioner, T.C. Memo. 2005-71; Sciola v. Commissioner, T.C. Memo. 2003-334; Moore v. Commissioner, T.C. Memo. 2001-285.  However, where the taxpayer denies receipt and the Commissioner proffers only a notice of deficiency addressed to the taxpayer and no evidence of its actual mailing, receipt for purposes of section 6330(c)(2)(B) has not been presumed. Calderone v. Commissioner, T.C. Memo. 2004-240.  We believe the present circumstances are indistinguishable from Calderone v. Commissioner, supra, and accordingly conclude that receipt of the notice of deficiency for 1996 has not been shown.  Consequently,

Settlement Officer Waters erred in refusing to consider challenges to the underlying liability for that year.

The error was harmless in this case, however. As part of the pretrial process, respondent's counsel undertook extensive efforts through formal discovery to have petitioner reveal the nature of his dispute over the underlying liability for 1996, to no avail. When questioned at trial about the determination in the notice of deficiency that he had income for 1996, petitioner was evasive and offered no specific challenge to it. The challenge petitioner offered at trial to the underlying liabilities for 1990-93 was that he had no tax liability for those years because the income he received was not taxable because it was received in exchange for labor. In these circumstances, we do not believe it is either necessary or productive to remand the case to Appeals for a further hearing on any challenge to the underlying liability for 1996. See Lunsford v. Commissioner, 117 T.C. at 189. Petitioner has had ample opportunity to obtain de novo review in this proceeding of any legitimate challenge to the underlying liability for 1996.

Appeals Employees' Impartiality

In the absentee letter, petitioner also complained that a second Appeals employee participated in the terminated conference between petitioner and Settlement Officer Waters in December 2003. Petitioner argues that Settlement Officer Waters was

thereby improperly influenced, in violation of petitioner's right to an impartial Appeals employee under section 6330(b)(3) and section 301.6330-1(d)(1), Proced. & Admin. Regs. Settlement Officer Waters addressed this issue in the 2004 supplemental determination, observing that petitioner himself had a witness at the conference and insisted that it be audio recorded. Petitioner has not disputed this assertion. The 2004 supplemental determination further observes that it is Appeals' practice to have a second employee present when conferences are audio recorded.

For purposes of section 6330(b)(3), an Appeals employee is considered to be "impartial" if he or she had "no prior involvement with respect to the unpaid tax" at issue. The 2004 supplemental determination states that the settlement officer making it had no prior involvement with the liabilities at issue, and petitioner has offered no evidence that either Settlement Officer Waters, or the second Appeals employee participating in the December 2003 conference, had any prior involvement. Moreover, nothing in the record of this case suggests that any Appeals employee involved in petitioner's hearing was demonstrably biased. See Cox v. Commissioner, 126 T.C. No. 13 (2006); Criner v. Commissioner, T.C. Memo. 2003-328. Accordingly, petitioner has shown no failure to comply with section 6330(b)(3).

Ex Parte Contacts

In the absentee letter, and in a statement submitted at trial, petitioner contends that there were impermissible ex parte contacts between respondent's Office of Appeals and Office of Chief Counsel in connection with his hearing. The Appeals Office records document that the Appeals employees handling petitioner's hearing request communicated on numerous occasions with the Chief Counsel attorney assigned to petitioner's case. The first recorded contact occurred on July 24, 2002, and communications between the two Offices continued throughout 2003 and 2004.

Section 1001(a) of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, 112 Stat. 689, provides:

> The Commissioner of Internal Revenue shall develop and implement a plan to reorganize the Internal Revenue Service. The plan shall * * *
> * * * * * * *
> (4) ensure an independent appeals function within the Internal Revenue Service, including the prohibition in the plan of ex parte communications between appeals officers and other Internal Revenue Service employees to the extent that such communications appear to compromise the independence of the appeals officers.

In Rev. Proc. 2000-43, 2000-2 C.B. 404, respondent issued guidance concerning ex parte communications by Appeals to comply with the foregoing statutory directive. See generally Drake v. Commissioner, 125 T.C. 201, 208-209 (2005). Rev. Proc. 2000-43, supra, reaffirms that the Office of Chief Counsel is the legal

adviser to all of respondent's employees, including Appeals employees, on all matters pertaining to the interpretation, administration, and enforcement of the internal revenue laws and related statutes. Id. sec. 2, Q&A-11, 2000-2 C.B. at 406. Rev. Proc. 2000-43, supra, contemplates that Appeals may obtain legal advice from the Office of Chief Counsel, subject to certain limitations, including that the advice should not be provided by the same Chief Counsel field attorneys who advised the Internal Revenue Service employee who made the determination that Appeals is reviewing. Id. Appeals employees are further cautioned that, while they may obtain legal advice from the Office of Chief Counsel, they remain responsible for independently evaluating the strengths and weaknesses of the specific issues presented by the cases assigned to them and for making independent judgments concerning the overall strengths and weaknesses of the cases. Id. The limitations of Rev. Proc. 2000-43, supra, do not apply, however, where a case has been docketed in this Court.[8]

Giving due consideration to the principles espoused in RRA 1998 section 1001(a) and Rev. Proc. 2000-43, supra, we are not persuaded, in the context of the entire record in this case, that there is reason to suspect that the independence of the Appeals Office employees assigned to it was compromised by contacts with

---

[8] Rev. Proc. 2000-43, sec. 2, Q&A-11, 2000-2 C.B. at 406, further provides that cases docketed in this Court should instead be handled in accordance with Rev. Proc. 87-24, 1987-1 C.B. 720.

attorneys in the Office of Chief Counsel.  We note first that the contacts here occurred after this case was docketed, putting them outside the purview of Rev. Proc. 2000-43, supra.  Even if the proscriptions of Rev. Proc. 2000-43, supra, were applied, there is no evidence or reason to suspect that the Chief Counsel attorney assigned to petitioner's case advised the IRS employee who made the decision to issue the Final Notice of Intent to Levy to petitioner.

We are also mindful that petitioner at no point raised an issue with the Appeals employees that required the exercise of significant judgment.  Prior to trial, petitioner never identified the nature of any challenge he wished to make with respect the underlying liabilities, even though advised by Appeals that he was entitled to do so with respect to 1990 through 1993.  He offered no specific collection alternative (or, as a single filer, any spousal defenses).  Rather, he presented a myriad of procedural challenges, the resolution of which, in our view, did not require the exercise of significant independent judgment.  To the extent the Forms 1040X submitted by petitioner, which were reviewed by the Appeals employees, might be considered evidence of the nature of his challenge to the underlying liabilities, they contained tax protester arguments that do not warrant serious consideration.

In these circumstances, we conclude that any ex parte contacts did not prejudice petitioner and should not give rise to a remand for yet another hearing opportunity before a different Appeals officer.

Bankruptcy Discharge

In his request for a hearing, petitioner claimed that the liabilities at issue had been discharged in bankruptcy. The 2004 supplemental determination concluded that the liabilities had not been discharged.

We have jurisdiction, when reviewing under section 6330(d) a determination to proceed with a levy, to decide whether income tax liabilities have been discharged in bankruptcy. Swanson v. Commissioner, 121 T.C. 111, 116-117 (2003).

We are satisfied that the 2004 supplemental determination correctly concluded that petitioner's 1990-93 and 1996 liabilities were not discharged as a result of his 1993 bankruptcy discharge. The 1990 and 1991 liabilities were not dischargeable because they were from years for which returns were due within 3 years before the August 2, 1993, filing of the petition in bankruptcy. See 11 U.S.C. secs. 507(a)(8)(A)(i), 523(a)(1)(A) (2000); Durrenberger v. Commissioner, T.C. Memo. 2004-44. The 1992 liability was not dischargeable because petitioner's 1992 return was filed on June 10, 1994, which was after its extended due date (August 15, 1993), and after 2 years

before the August 2, 1993, filing of his bankruptcy petition. See 11 U.S.C. sec. 523(a)(1)(B)(ii) (2000); Ramsdell v. Commissioner, T.C. Memo. 2003-317. The 1993 liability was not a prepetition debt that could have been discharged because petitioner did not make an election under section 1398(d)(2) to end his taxable year as of the filing of the bankruptcy petition during 1993. See, e.g., In re Smith, 210 Bankr. 689, 692 (Bank. D. Md. 1997) (citing In re Johnson, 190 Bankr. 724, 726-727 (Bank. D. Mass. 1995)); In re Mirman, 98 Bankr. 742, 744-745 (Bank. E.D.Va. 1989); see also S. Rept. 96-1035, 25, 26 (1980), 1980-2 C.B. 620, 632-633 ("If the debtor does not make the election, no part of the debtor's tax liability for the year in which the bankruptcy case commences is collectible from the estate, but is collectible directly from the individual debtor"). Likewise, the 1996 liability was obviously not a debt incurred before the filing of the bankruptcy petition and thus could not have been discharged therein. See 11 U.S.C. sec. 727(b) (2000); Swanson v. Commissioner, supra at 120. Consequently, the 2004 supplemental determination's conclusion that the liabilities at issue were not discharged was not an abuse of discretion.

Notice and Demand

In the petition, petitioner claimed that he had not received notice and demand for payment for any of the liabilities at issue, as is required by section 6303. The 2003 supplemental

determination concluded that the computerized transcripts of petitioner's account showed that notice and demand for each liability had been sent on the date it was assessed. Although this issue is not specifically addressed in the 2004 supplemental determination, Settlement Officer Waters's case notes state that records from respondent's IDRS (integrated data retrieval system) confirm that "notice and demand [were] made on all years".

We are persuaded that notice and demand pursuant to section 6303 was given to petitioner and that Settlement Officer Waters properly so verified.[9] Petitioner's claims regarding notice and demand are meritless.

Collection Alternatives

In the absentee letter, petitioner raised questions concerning collection alternatives. The 2004 supplemental determination did not consider collection alternatives on the grounds, inter alia, that petitioner had not responded to Appeals' request that he submit a collection information statement. The record establishes that Appeals requested collection information statements from petitioner on at least two occasions, and we are satisfied that petitioner ignored these requests. Thus, it was not an abuse of discretion for the

---

[9] The notice of intent to levy in this case would in any event likely satisfy the requirements of sec. 6303. See Hughes v. United States, 953 F.2d 531, 536 (9th Cir. 1992); Perez v. Commissioner, T.C. Memo. 2002-274; Standifird v. Commissioner, T.C. Memo. 2002-245, affd. 72 Fed. Appx. 729 (9th Cir. 2003).

settlement officer to fail to consider collection alternatives. See, e.g., <u>Picchiottino v. Commissioner</u>, T.C. Memo. 2004-231; <u>Newstat v. Commissioner</u>, T.C. Memo. 2004-208; <u>Moorhous v. Commissioner</u>, T.C. Memo. 2003-183.

<u>"Tax Protester" References</u>

In the absentee letter, petitioner complained that Appeals was aware that respondent maintained records designating petitioner as a "tax protester" and had taken no action to have this designation expunged, in violation of section 3707 of the RRA 1998, 112 Stat. 778. The 2004 supplemental determination concedes that certain IRS documents so identified petitioner but treats the matter as of no consequence because the documents "were from an earlier period".

Section 3707(a) of the RRA 1998 provides that officers and employees of the IRS shall not designate taxpayers as "illegal tax protesters (or any similar designation)" and in the case of any such designation made before the enactment of the RRA 1998:

Sec. 3707. Illegal Tax Protester Designation.

\* \* \* \* \* \* \*

(A) shall remove such designation from the individual master file; and
(B) shall disregard any such designation not located in the individual master file.

None of the documents that identified petitioner as a tax protester are in evidence. While the designation apparently appears in some of respondent's documents concerning petitioner, section 3707(a) specifically contemplates that preexisting tax

protester designations may remain in materials other than the individual master file and merely directs respondent's employees to disregard them.  On this record, we conclude that petitioner has not shown that there is any designation of him as a tax protester in a document created after enactment of the RRA 1998, nor is there any evidence that would suggest the designation is contained in petitioner's individual master file.[10]  Accordingly, the 2004 supplemental determination's treatment of this issue as inconsequential was not an abuse of discretion.[11]

Liens for 1990, 1991, 1992, 1993, and 1996 Liabilities

In his request for a hearing, petitioner also sought review of various notices of Federal tax lien.  The 2004 supplemental determination found that the only notices of Federal tax lien that had been filed with respect to petitioner were filed before 1999[12] and were thus not subject to section 6320 hearing and review rights.  As there is no evidence of a lien filing in 1999

---

[10]  The Internal Revenue Manual, sec. 3.12.166.2.2 (34)(July 7, 2005), defines the individual master file as "A magnetic tape file  maintained at Martinsburg Computing Center (MCC) containing information about taxpayers filing Individual returns and related documents."

[11] Petitioner in any event points to no provision which suggests that a violation of sec. 3707(a) of the RRA 1998 would bar collection of validly assessed income taxes.  Cf. Davis v. Rucker, 90 AFTR2d 2004-6394, 2002-2 USTC par. 50,669 (M.D. Fla. 2002).

[12] The notices concerned liens for all years at issue except 1996.

or thereafter, there is no abuse of discretion in the conclusion reached in the 2004 supplemental determination.  See RRA 1998 sec. 3401(d), 112 Stat. 750; Parker v. Commissioner, 117 T.C. 63 (2001); Parker v. Commissioner, T.C. Memo. 2005-294.

Section 6673 Penalty

In both his withdrawn and denied motions for summary judgment, respondent sought imposition on petitioner of a penalty under section 6673(a).  Section 6673(a)(1) authorizes this Court to impose a penalty of up to $25,000 upon the taxpayer whenever it appears that proceedings have been instituted or maintained by him primarily for delay or his position is frivolous or groundless.  Respondent having raised the issue, the Court considers it.

A substantial portion of the contentions raised by petitioner are classic, shopworn tax protester arguments.  At trial, petitioner maintained that he had no income tax liability for 1990 through 1993 because he received income in exchange for his labor.  The Forms 1040X petitioner submitted for 1990, 1991, and 1993 to dispute his previously reported tax liabilities all contained such arguments as "no Code section makes me 'liable' for income taxes", and "'income' * * * can only be a derivative of corporate activity."  Advancing such arguments in this Court,

including section 6330 cases,[13] is well established grounds for the imposition of section 6673 penalties. However, in light of the fact that petitioner also sought review of a notice of determination and a supplemental notice of determination for which respondent himself eventually conceded a remand was appropriate, we shall exercise our discretion under section 6673(a)(1) and not impose a penalty in this case. Petitioner is hereby warned, however, that should he advance these or similar arguments in this Court in the future, he may be subject to penalties under section 6673(a)(1).

## Conclusion

Since we have found the underlying liabilities for 1990, 1991, 1992, 1993, and 1996 are correct and that there was no abuse of discretion in the 2004 supplemental determination, we conclude that respondent may proceed with the levy that was the subject of the notice in this case.

To reflect the foregoing,

An apppropriate order and decision will be entered for respondent.

_____

[13] See Pierson v. Commissioner, 115 T.C. 576, 581 (2000).