FILED
United States Court of Appeals
Tenth Circuit

January 30, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LOUIS A. COX; CHRISTINE COX,

      Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 06-9004

---

**APPEAL FROM THE UNITED STATES TAX COURT**
**(T.C. No. 21733-03L and 14693-04L)**

---

Kevin Planegger (Ted H. Merriam with him on the briefs), of Merriam Law Firm,
P.C., Denver, Colorado, for Petitioners - Appellants.

Karen Gregory, Attorney (Eileen J. O'Connor, Assistant Attorney General;
Andrea R. Tebbets, Attorney, on the brief), Tax Division, Department of Justice,
Washington, D.C., for Respondent - Appellee.

---

Before **KELLY**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

      This appeal considers whether an Internal Revenue Service ("IRS") appeals

officer was disqualified by statute, I.R.C. § 6330(b)(3), from conducting a

Collection Due Process ("CDP") hearing regarding the taxpayers' 2001 and 2002

tax liabilities, when he had previously considered those liabilities during a CDP hearing involving a prior year's (2000) tax liability.[1] Exercising jurisdiction under I.R.C. § 7482(a)(1), we reverse the tax court's decision which held that disqualification was unnecessary.

Background

After receiving from the IRS a "Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing" regarding their unpaid 2000 tax liability, taxpayers (Louis A. Cox and Christine Cox) requested a CDP hearing pursuant to I.R.C. § 6330, seeking a less intrusive collection method.[2] Appeals officer Bruce Skidmore ("AO Skidmore") was assigned. He informed the taxpayers that to be considered for collection alternatives, they needed to file all tax returns for which they were liable and be in current compliance; to qualify for an installment agreement they needed to document their ability to pay their current taxes and the delinquency in a reasonable period of time (defined as the statutory period for

---

[1] Internal Revenue Code section 6330(b) is entitled "Right to fair hearing," and subsection (b)(3) provides:

> Impartial officer.– The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320. A taxpayer may waive the requirement of this paragraph.

[2] Taxpayers are husband and wife and for the years at issue have jointly filed their tax returns.

collection plus up to five additional years); and to qualify for an offer-in-compromise they needed to demonstrate their offer equaled their net assets plus an amount that could be collected from future disposable income.

AO Skidmore held a CDP hearing on August 12, 2003 regarding the taxpayers' 2000 tax liability. Although the taxpayers had not submitted all requested information by that date, they ultimately filed tax returns for 2001 and 2002, reporting liabilities for each year with unpaid balances. They also submitted financial information and requested that their account be placed in "currently uncollectible status" because they had "insufficient income to meet necessary allowable expenses." ROA Ex. 3-J at 70.[3]

After reviewing this information, AO Skidmore concluded that he could not recommend an alternative to a levy. As part of his review, he considered the 2001 and 2002 tax returns and was concerned that the taxpayers reported a 2002 tax liability of $146,460 but only made $1,000 in estimated payments, notwithstanding the fact that they earned almost $100,000 in net income during the first seven months of 2003. Aplt. App. at 152. He ultimately concluded taxpayers had the ability to make payments toward their outstanding tax liability, which included tax years 1999-2002 and that they were not eligible for an

---

[3] As part of the record on appeal, the Commissioner has submitted exhibits from the tax court's record in No. 14693-04L.

installment agreement or offer-in-compromise because they were not in current compliance regarding estimated taxes for 2003.  Id. at 153-54.

On November 25, 2003, the Appeals Office issued a Notice of Determination holding that the proposed levy for 2000 was appropriate.  Id. at 115.  The Appeals Office determined that the taxpayers were ineligible for collection alternatives as their financial information showed an ability to make payments toward the unpaid tax over the next few years and they did not demonstrate a levy would be overly intrusive.  Id. at 114.

Meanwhile, because taxpayers filed their 2001 and 2002 tax returns without payment, the IRS issued to them a "Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing" with respect to these liabilities.  ROA Ex. 6-J at 16-17.  As before, taxpayers requested a CDP hearing and AO Skidmore was assigned to their case.  They requested that AO Skidmore recuse himself, because of his prior involvement in the 2000 CDP hearing.  Aplt. App. at 158.  Although AO Skidmore believed he was not "technically excluded from hearing these new periods, since [he] ha[d] no 'prior involvement' on these new periods," he agreed to postpone the hearing to confirm his conclusion with his supervisor.  Id.  He consulted with his team manager who agreed that there was "no compelling reason to make a reassignment since it was not technically required" and "would do nothing but create delay."  Id.

- 4 -

After being so informed, taxpayers continued to protest AO Skidmore's involvement, claiming that the resolution of their prior case involved discussion of their 2001 and 2002 liabilities. After receiving the taxpayers' letter, AO Skidmore wrote in his notes that:

> (a) I had noted the 2001 & 2002 returns were delinquent when I had the case on 1999 & 2000, (b) I solicited the returns and they were filed through me, (c) I considered current financials which would pertain to all periods of the taxpayers, but (d) I at no time was involved with either a consideration of the correct tax liability for 2001 & 2002 nor was I in any way involved in any consideration of collection action for such liabilities.

ROA Ex. 5-J at 2.

AO Skidmore held a CDP hearing on June 22, 2004, and later concluded that taxpayers did not qualify for a collection alternative. The Appeals Office subsequently issued a Notice of Determination concluding that the proposed levy for 2001 and 2002 was appropriate. Aplt. App. at 163. The notice explained that the financial information taxpayers submitted did not support their being placed in uncollectible status, no procedural errors were found in connection with that determination, and a levy would not be overly intrusive. Id.

Taxpayers filed petitions for review of both Appeals Office determinations in tax court, requesting that their delinquent tax liabilities be placed in currently uncollectible status. The cases were consolidated and submitted fully stipulated. The taxpayers argued that the Appeals Office failed to keep an adequate record of the administrative proceedings preventing "adequate judicial review," they did

- 5 -

not receive a fair CDP hearing for 2001 and 2002 by an impartial Appeals Officer with no prior involvement in the case as required by I.R.C. § 6330(b)(3), and AO Skidmore failed to properly evaluate the merits of their case. Aplt. App. at 21-22. The tax court rejected each of these arguments and affirmed the Appeals Office determinations. See Cox v. Comm'r, 126 T.C. 237, 261 (2006).

On appeal, taxpayers raise only one issue: whether the tax court erred in holding that AO Skidmore, who conducted the CDP hearing for tax year 2000, was not disqualified by I.R.C. § 6330(b)(3) from conducting the CDP hearing for tax years 2001 and 2002.[4]

### Discussion

We review tax court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a)(1). Accordingly, we review the tax court's findings of fact under a clearly erroneous standard while questions of law are reviewed de novo. ABC Rentals of San Antonio, Inc. v. Comm'r, 142 F.3d 1200, 1203 (10th Cir. 1998) (citation omitted). We do not defer to the tax court's statutory interpretations.

---

[4] Although taxpayers previously claimed "that prejudice engendered by AO Skidmore's prior dealings with them prevented him from taking an unbiased look at their 2001 and 2002 years," Cox, 126 T.C. at 250, they do not raise that argument on appeal. They argue only that I.R.C. § 6330(b)(3) precluded AO Skidmore from conducting the CDP hearing for 2001 and 2002, given his prior involvement with those liabilities during the CDP hearing for 2000.

- 6 -

Scanlon White, Inc. v. Comm'r, 472 F.3d 1173, 1175 (10th Cir. 2006). In contrast, we defer to the Commissioner's regulatory interpretation of the Internal Revenue Code so long as it is reasonable, Cottage Sav. Ass'n v. Comm'r, 499 U.S. 554, 560-61 (1991), meaning that "the regulation harmonizes with the plain language of the statute, its origin, and its purpose." Nat'l Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472, 477 (1979). "A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent." Id. "But this general principle of deference, while fundamental, only sets 'the framework for judicial analysis; it does not displace it.'" United States v. Vogel Fertilizer Co., 455 U.S. 16, 24 (1982) (quoting United States v. Cartwright, 411 U.S. 546, 550 (1973)). "The framework for analysis is refined by consideration of the source of the authority to promulgate the regulation at issue." Id. Treasury regulations promulgated under the Commissioner's general authority under 26 U.S.C. § 7805(a) to "prescribe all needful rules and regulations" are owed "less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision." Rowan Cos., Inc. v. United States, 452 U.S. 247, 253 (1981); see also McKinney v. Comm'r, 732 F.2d 414, 417 (10th Cir. 1983).

Applying these standards, we analyze I.R.C. § 6330(b)(3) and the Treasury Regulation implementing it, Treas. Reg. § 301.6330-1(d)(2). Section 6330,

entitled "Notice and opportunity for hearing before levy," was added to the Internal Revenue Code as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (the "RRA") as part of Congress' effort to provide taxpayers with more due process protection in connection with IRS collection actions. See Pub. L. 105-206, 112 Stat. 685 (1998). Under section 6330, the IRS is required to notify a taxpayer in writing (the "CDP Notice") at least 30 days prior to a proposed levy regarding a specified tax period that the taxpayer may request a hearing before the IRS Office of Appeals, known as a CDP hearing, to challenge the levy action. If the taxpayer requests a CDP hearing, the IRS may not levy on the taxpayer's property while the hearing is pending. Id. § 6330(e)(1).

At the CDP hearing, the taxpayer may raise any relevant issue related to the unpaid tax or proposed levy, challenge the appropriateness of the collection action, and request collection alternatives, such as installment payments and offers in compromise. Id. § 6330(c). The taxpayer may not challenge the existence or amount of the tax liability unless the taxpayer did not receive a timely statutory notice of deficiency or otherwise have the opportunity to dispute the tax liability. Id. At the hearing, the appeals officer must (1) obtain verification from the Treasury Secretary that applicable legal and procedural requirements have been met; (2) consider any challenges to collection, defenses, or offers of collection alternatives raised by the taxpayer; and (3) determine whether the "proposed collection action balances the need for the efficient

collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." Id. The determination of the Appeals Office, issued in a "Notice of Determination," Treas. Reg. § 301.6330-1(e)(3) (A-E8), is subject to judicial review by the tax court. I.R.C. § 6330(d). Our jurisdiction to review the tax court's decision arises under I.R.C. § 7482(a)(1).

The focus of this appeal concerns section 6330's requirement that taxpayers receive a fair hearing conducted by an impartial appeals officer. Id. § 6330(b)(3).[5] An impartial appeals officer is "an officer or employee who has had no prior involvement with respect to the unpaid tax specified in [the CDP Notice] before the first hearing under this section or section 6320."[6] Id. § 6330(b)(3).

The Code does not define the term "no prior involvement." Pursuant to his general authority under 26 U.S.C. § 7805(a), the Commissioner has promulgated regulations interpreting the term's meaning, see Treas. Reg. § 301.6330-1(d)(2) (2004). Using a question and answer format, the regulations define prior involvement as follows:

> Q-D4. What is considered to be prior involvement by an employee or officer of Appeals with respect to the tax and tax period or periods involved in the hearing?

[5] Although this requirement may be waived by the taxpayer, id., the taxpayers have not done so here.

[6] Section 6320 is a related provision included in the RRA that entitles a taxpayer to similar protections after the IRS issues a notice of lien.

A-D4.  Prior involvement by an employee or officer of Appeals includes participation or involvement in an Appeals hearing (other than a CDP hearing held under either section 6320 or section 6330) that the taxpayer may have had with respect to the tax and tax periods shown on the CDP Notice.

Id.[7]

The tax court held that AO Skidmore's consideration of taxpayers' 2001 and 2002 liabilities during the CDP hearing for tax year 2000 did not constitute prior involvement under this statutory and regulatory language.  Cox, 126 T.C. at 253.  The tax court focused on the plain language and legislative history of section 6330(b)(3), Treas. Reg. § 301.6330-1(d)(2), and practical concerns related to conducting CDP hearings.  Id. at 250-53.  On appeal, the Commissioner essentially argues that we should affirm the decision of the tax court on similar

---

[7] The 2004 version of the regulation applies to this case.  On November 16, 2006, the regulation was amended as follows:

Q-D4. What is considered to be prior involvement by an employee or officer of Appeals with respect to the tax and tax period or periods involved in the hearing?

A-D4. Prior involvement by an Appeals officer or employee includes participation or involvement in a matter (other than a CDP hearing held under either section 6320 or section 6330) that the taxpayer may have had with respect to the tax and tax period shown on the CDP Notice.  Prior involvement exists only when the taxpayer, the tax and the tax period at issue in the CDP hearing also were at issue in the prior non-CDP matter, and the Appeals officer or employee actually participated in the prior matter.

Treas. Reg. § 301.6330-1(d)(2) (2006).

grounds. We have not had occasion to interpret section 6330(b)(3) and we are aware of no cases from other courts that discuss its meaning, other than to repeat and apply its language without analysis. See, e.g., Herip v. United States, 106 F. App'x 995, 999 (6th Cir. 2004); Carlson v. United States, 394 F. Supp. 2d. 321, 327 (D. Mass 2005); Hardy v. United States, 2003 WL 21541358, * 4 (N.D. Ala. Jun. 3, 2003); Sapp v. Comm'r, 91 T.C.M. (CCH) 1177 (2006). In analyzing section 6330(b)(3), we conclude that we must reverse the decision of the tax court.

The best indicator of a statute's meaning should be the language itself, see McGraw v. Barnhart, 450 F.3d 493, 498 (10th Cir. 2006), and section 6330(b)(3) clearly and unambiguously provides that an appeals officer conducting a CDP hearing shall have had "no prior involvement" with respect to the unpaid tax specified on the CDP Notice. The tax court and Commissioner interpret this term to mean only that an appeals officer has not previously conducted a hearing (other than a section 6330 or 6320 hearing) for the taxpayer regarding the collection of the same unpaid tax, essentially limiting section 6330's meaning to the language of Treas. Reg. § 301.6330-1(d)(2). However, "we assume that in drafting legislation, Congress says what it means." Sundance Assoc., Inc. v. Reno, 139 F.3d 804, 809 (10th Cir. 1998). An agency may not read ambiguity into a statute in order to reach a practical result. Id. While interpreting section 6330(b)(3) narrowly makes it less likely that appeals officers will have to recuse

themselves from hearing taxpayers' cases and easier for Appeals Officers to assign officers to CDP hearings, we find no legal support for doing so. By using the term "involvement," Congress deliberately implemented a broad restriction on IRS appeals officers to ensure their impartiality. To be sure, Congress never stated any intent to narrow the meaning of "prior involvement" to prior involvement in a hearing, let alone one specifically regarding the tax liability listed on the CDP Notice. A review of section 6330(b)(3)'s legislative history reveals that Congress' only statement regarding that provision is that it authorizes "a taxpayer [to] demand a hearing to take place before an appeals officer who has had no prior involvement in the taxpayer's case," confirming Congress' broad intent. S. Rep. 105-174, at 68 (1998). In fact, Congress expressly contemplated only one scenario where an appeals officer with prior involvement in the taxpayer's case could conduct a subsequent CDP hearing, namely that the same appeals officer can conduct a pre-levy CDP hearing pursuant to I.R.C. § 6330 and a pre-lien CDP hearing pursuant to I.R.C. § 6320 regarding the same unpaid liability. See I.R.C. § 6330(b)(3); H.R. Rep. No. 105-599, at 266 (1998) (Conf.

Rep.).[8]  Congress did not provide for other exceptions,[9] nor did it express any

intent that additional exceptions could be provided by the Commissioner.

Our conclusion is further supported by the purpose of section 6330, which

is to provide taxpayers with similar due process protection "in dealing with the

IRS that . . . they would have in dealing with any other creditor."  S. Rep. No.

105-174, at 67.  Central to that purpose is the taxpayer's fundamental right to an

impartial appeals officer, no different than the right to an impartial decisionmaker

in any other due process context.  See Withrow v. Larkin, 421 U.S. 35, 46-47

(1975) ("[A] fair tribunal is a basic requirement of due process.  This applies to

administrative agencies which adjudicate as well as to courts.  Not only is a

biased decisionmaker constitutionally unacceptable but our system of law has

---

[8] The tax court found that this exception supports reading section 6330 as setting forth a permissive standard because it claims the harm that could result from the same appeals officer conducting a taxpayer's section 6330 and 6320 hearing is no different than that which could result in cases like the instant case. See Cox, 126 T.C. at 250, 252.  We disagree.  Congress created the 6330/6320 exception because it recognized that the IRS frequently combines notices of intent to lien with notices of intent to levy, and thus anticipated that the same appeals officer would hear the taxpayer on both lien and levy issues regarding the same unpaid tax, either in multiple hearings or to the extent practicable, in a single hearing.  See H.R. Rep. No. 105-599, at 266 (1998) (Conf. Rep.).  More importantly, the facts and issues regarding whether a particular unpaid tax is collectible are the same in both a 6330 and 6320 hearing.  Id. at 255.  In contrast, the problem presented by the instant case is that an appeals officer could allow his prior evaluation of the unpaid tax to bias his determination that the tax is now collectible.

[9] Indeed, when it wants to do so, Congress knows how to provide specific circumstances that render a decisionmaker impartial.  Cf. 28 U.S.C. § 455(b) (when judicial disqualification is mandatory).

always endeavored to prevent even the probability of unfairness.") (citations and internal quotations omitted).  Limiting the definition of "no prior involvement" to Treas. Reg. § 301.6330-1(d)(2) impermissibly narrows that protection.  Indeed, one need look no further than the facts of this case to illustrate our point.  Although AO Skidmore claimed he "at no time was involved with . . . a consideration of the correct tax liability for 2001 & 2002," ROA Ex. 5-J at 2, his letter to taxpayers following the CDP hearing for 2000 indicates otherwise.  AO Skidmore wrote,

> The 2002 return had a liability of $146,460 but only a ridiculously low $1,000 paid as an estimated payment.  In light of 2002's unjustified "optimism" that there would be no significant tax liability, and the established fact that significant income has been earned this year, I cannot credit the idea that this year's decision to make no estimated tax payments is based on a sound financial analysis. . . .  You have not paid your taxes for the last four years (1999-2002) and it looks like you are now adding a fifth. . . . Nothing I have been provided removes the big picture of high income taxpayers who did not pay their taxes during the fat years and now facing leaner years you wish to maintain a high standard of living and continue to have the government fund business through unpaid taxes.  You already have an involuntary loan from the government of $514,000 and we are unwilling to loan more, in fact, we are going to collect some overdue payments by levy if voluntary payments are not made.  I don't really expect you can come up with $300K in cash to make full payment on 1999 & 2000 (or the $514,000 to pay all liabilities) . . . .

Aplt. App. at 152, 154 (emphasis added).  From these statements, it appears that even though AO Skidmore was not technically involved in a determination regarding whether the 2001 and 2002 liabilities were correct or subject to levy

- 14 -

prior to the CDP hearing for 2001 and 2002, he did previously formulate opinions about the taxpayers' ability to pay those liabilities, opinions section 6330(b)(3) was enacted to prevent. We thus reject the Commissioner's claim that "the very notion of 'involvement' by an 'officer or employee' of the Appeals Office has no meaning if the specified tax and tax period have never previously been the subject of collection activity within the purview of Appeals." Aplee Br. at 30-31.

In any event, it is not relevant to our inquiry whether AO Skidmore was biased by his prior involvement with the taxpayers' 2001 and 2002 liabilities, all that is required for his recusal is that he in fact did have prior involvement with those liabilities. His consideration of those liabilities during the CDP hearing for 2000 was a material factor in his decision and constitutes prior involvement within the meaning of I.R.C. § 6330(b)(3). Thus, the taxpayers are entitled to a collection due process hearing before an impartial appeals officer in accordance with the statute.[10]

The dissent takes issue with our reading of section 6330(b)(3)'s plain language, arguing that "Congressional use of the word 'involvement' in

---

[10] We hold only that the tax court's application of the 2004 version of Treas. Reg. § 301.6330-1(d)(2) in this case was invalid. On its face, the regulation does not restrict the definition of "no prior involvement" to that used by the tax court and therefore is not invalid per se. However, by implication our holding invalidates the 2006 version of the regulation as that version provides that prior involvement "exists only when the taxpayer, the tax and the tax period at issue in the CDP hearing also were at issue in the prior non-CDP matter." Treas. Reg. § 301.6330-1(d)(2) (2006).

- 15 -

conjunction with the phrase 'with respect to the unpaid tax' demonstrates the statute requires actual participation by the appeals officer in matters centered on the unpaid tax at issue" in order to disqualify the officer from conducting a subsequent CDP hearing regarding the same unpaid tax. Dissent at 2. Thus, the dissent essentially adopts the conclusion reached by the tax court and the position of the Commissioner that "no prior involvement" means no actual participation in a prior hearing or matter regarding the unpaid tax. However, the statute does not say "no prior participation in a hearing or matter with respect to the unpaid tax," it simply says "no prior involvement with respect to the unpaid tax." Therefore, we do not find support for the dissent's reading of the statute.

Further, we find no support for the dissent's conclusion that AO Skidmore's involvement with the 2001 and 2002 liabilities constituted "[m]ere knowledge of the existence of a self-reported an unpaid tax liability or [a] tangential consideration of any such conceded liability." Dissent at 2. As noted earlier, although AO Skidmore had not previously officially determined the correct tax or penalty owed for 2001 and 2002 or whether such liabilities were collectible, he nonetheless was able to formulate his own opinion about whether such tax was collectible by virtue of his prior involvement with those liabilities. That opinion, as even the dissent acknowledges, was a material factor in his decision regarding taxpayers' 2000 liability. If that is so, surely that opinion was, or at least could have been, material to his decision regarding the 2001 and 2002

liabilities.  The dissent's insistence that an Appeals Officer is not required to recuse himself pursuant to section 6330(b)(3) unless he has previously made an official determination about whether a liability is accurate or collectible adds a requirement not found in the statute's language.  We think that once an Appeals Officer has substantive and material involvement with a taxpayer's liability, regardless of whether the liability is the liability currently under official review by the Appeals Officer, he has had prior involvement with respect to that liability within the meaning of section 6330(b)(3).

REVERSED.  The Commissioner's motion to permit levy pending appeal with respect to year 2000 is granted.

*Cox v. Comm'r,* No. 06-9004

**MURPHY**, Circuit Judge, dissenting.


I respectfully disagree with the majority's conclusion that AO Skidmore had prior involvement with respect to Taxpayers' unpaid 2001 and 2002 income taxes before he conducted the CDP hearing for those tax years.

When AO Skidmore determined that Taxpayers' delinquent 2000 tax liability should not be placed in currently uncollectable status, he was aware Taxpayers had self-reported a $33,686 individual income tax liability for 2001 and a $147,542 individual income tax liability for 2002, both of which were delinquent. The majority concludes that AO Skidmore's awareness of Taxpayers' 2001 and 2002 tax liabilities, and his consideration of those liabilities when he evaluated their eligibility for collection alternatives as part of the 2000 CDP hearing, constitutes prior involvement, thereby disqualifying him from conducting the 2001/2002 CDP hearing.

Section 6330(b)(3) prohibits an appeals officer conducting a CDP hearing from having "prior involvement *with respect to the unpaid tax*" that is the subject of the CDP hearing. 26 U.S.C. § 6330(b)(3) (emphasis added). Although the term "prior involvement" is not defined in § 6330(b)(3), the common definition of "involvement" includes "the state or fact of being involved." Webster's Third New International Dictionary 1191 (1993). "Involve" means "to draw in as a participant." *Id.*

Congressional use of the word "involvement" in conjunction with the phrase "with respect to the unpaid tax" demonstrates the statute requires actual participation by the appeals officer in matters centered on the unpaid tax at issue before the officer is deemed disqualified from conducting a CDP hearing with respect to that tax. *See Bailey v. United States*, 516 U.S. 137, 145 (1995) (holding the plain meaning of a statutory term can be gleaned from "its place and purpose in the statutory scheme"). Mere knowledge of the existence of a self-reported and unpaid tax liability or tangential consideration of any such conceded liability during an independent CDP hearing does not implicate any matter centered on the unpaid tax liability.

In conjunction with the 2000 CDP hearing, Taxpayers submitted financial information in compliance with Treas. Reg. § 301.6330-1(e). That information included Taxpayers' 2001 and 2002 individual income tax returns. AO Skidmore considered the 2001 and 2002 unpaid tax liabilities only in the context of evaluating whether Taxpayers had a current ability to pay their 2000 tax liability or qualify for collection alternatives. AO Skidmore did not process Taxpayers' 2001 and 2002 individual income tax returns. He was not involved in the determination of the correct tax or penalty owed for those years.[1] He did not participate in pre-levy collection actions and he did not conduct a prior CDP

---

[1]The record demonstrates the 2001 and 2002 returns were processed by Revenue Officer Linda Andrews who sent Taxpayers a Notice of Intent to Levy on October 20, 2003, when the amounts owed were not paid in full.

hearing with respect to the 2001 or 2002 tax liabilities. Consideration of the 2001 and 2002 tax liabilities during the 2000 CDP hearing did not encompass any issue that involved those unpaid tax liabilities. Thus, under the plain meaning of "prior involvement," as that term is used in § 6330(b)(3), AO Skidmore was not disqualified from conducting the 2001/2002 CDP hearing.

The majority concludes that AO Skidmore's "consideration of [the 2001 and 2002] liabilities during the CDP hearing for 2000 was a material factor in his decision and constitutes prior involvement within the meaning of I.R.C. § 6330(b)(3)." Majority Opinion at 15. I have no quarrel with the conclusion that AO Skidmore's consideration of Taxpayers' self-reported tax liabilities for 2001 and 2002 was a factor in the decisions he made with respect to the *2000 CDP hearing* and Taxpayers' *2000 tax liabilities*. Section 6330(b)(3), however, prohibits him from conducting the 2001/2002 CDP hearing only if he had prior involvement with respect to Taxpayers' *2001 and 2002 taxes*. Simply considering Taxpayers' self-reported 2001 and 2002 tax liabilities as part of the 2000 CDP hearing does not constitute "prior involvement" in the unpaid taxes for 2001 and 2002. It is only such prior involvement that the statute prohibits.

The majority's conclusory and unsubstantiated belief that the opinion AO Skidmore formed about the collectability of the 2001 and 2002 taxes liabilities when he conducted the 2000 CDP hearing "was, or at least could have been, material to his decision regarding the 2001 and 2002 liabilities," is both

conjectural and irrelevant to the issue of statutory construction before this panel. Under the majority's reading of the statute, consideration of the conceded 2001 and 2002 tax liabilities at the 2000 CDP hearing for purposes of determining Taxpayers' ability to pay their 2000 tax liability disqualifies AO Skidmore from conducting the subsequent CDP hearing. Section 6330(b)(3), however, does not prohibit AO Skidmore from conducting the 2001/2002 CDP hearing merely because he conducted Taxpayers' 2000 hearing or was aware of the financial information submitted by Taxpayers in connection with that hearing. Thus, it is only AO Skidmore's consideration of the 2001 and 2002 tax liabilities that gives rise to his disqualification. This is true even though, under the majority's reasoning, prior opinions he formed about Taxpayers' ability to pay their other debts and obligations may have also been material to his opinion about the collectability of the 2001 and 2002 taxes. That does not make sense.

Because I would hold AO Skidmore had no prior involvement in the unpaid taxes that were the subject of the 2001/2002 CDP hearing, I would affirm the Tax Court on this issue.