T.C. Memo. 2017-50

UNITED STATES TAX COURT

LINDSAY MANOR NURSING HOME, INC., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24596-14L.                           Filed March 23, 2017.

<u>David J. Looby</u>, for petitioner.

<u>Ann Louise Darnold</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  In this collection due process (CDP) case, petitioner seeks

review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** Revenue Service (IRS or respondent) to uphold a notice of intent to levy.

Petitioner filed a motion for summary judgment under Rule 121 that the Court

addressed in part in its Opinion Lindsay Manor Nursing Home, Inc. v.

Commissioner (Lindsay Manor I), 148 T.C. __ (Mar. 23, 2017). And respondent

filed a subsequent motion for summary judgment under Rule 121. The remaining

questions for decision are whether IRS Settlement Officer Alcorte (SO Alcorte)

abused her discretion in rejecting petitioner's proposed installment agreement and

sustaining the collection action. For the reasons explained below, the Court will

grant respondent's motion for summary judgment and deny the remainder of

petitioner's motion for summary judgment.

Background

The following facts are based on the parties' pleadings and motion papers,

including the attached exhibits and affidavits.[2] See Rule 121(b). Petitioner

---

[2]Each party requests that certain of the other's affidavits and exhibits be stricken from the record because they were not part of the original administrative record. Although conflicting authority exists as to whether the Court's review in CDP cases is limited to the administrative record, neither the Court of Appeals for the Tenth Circuit nor the Court of Appeals for the D.C. Circuit has specifically ruled on the issue. The Court sees no reason to address the issue here; those requests are accordingly denied. See Lindsay Manor Nursing Home, Inc. v. Commissioner (Lindsay Manor I), 148 T.C. __, __ n.7 (slip op. at 14-15) (Mar. 23, 2017) (addressing conflicting authority regarding the proper appellate venue in this case and finding the determination irrelevant to the Court's analysis).

[*3] operates a nursing home facility in a rural community of fewer than 3,000 residents.  Its principal place of business was in Oklahoma at the time the petition was filed.

Petitioner has a long history of noncompliance with its Federal employment tax obligations dating back to the mid-2000s.[3]  On multiple prior occasions petitioner was given an installment agreement which the IRS revoked for noncompliance with either the terms of the agreement or its Federal tax filing and payment obligations.  The case at issue relates to petitioner's outstanding tax liability from Form 941, Employer's Quarterly Federal Tax Return, for the period ending December 31, 2013.

Petitioner timely filed its Form 941 for the quarterly period ending December 31, 2013, but failed to pay its tax liability for that quarter.  On April 14, 2014, respondent assessed the tax of $108,911 reported on the return and began collection efforts.

On April 24, 2014, respondent issued to petitioner a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing.  In

---

[3]Contained within petitioner's administrative file is an Integrated Collection System (ICS) history transcript.  Petitioner disputes neither its authenticity nor the contents of the statements contained within.  The transcript notes indicate that respondent had previously levied on petitioner's Medicaid funds.

**[\*4]** response petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, seeking to enter into a $6,000-per-month installment agreement for its unpaid employment tax liability. This request stated that if respondent were permitted to levy, petitioner's difficulty with Medicare and Medicaid collections would render it unable to pay either the employment tax balance it owed or its current taxes. Petitioner's request, however, did not dispute the underlying employment tax liability; petitioner checked the collection alternative boxes for "Installment Agreement" and "I Cannot Pay Balance".

Respondent mailed to petitioner a letter dated June 6, 2014, acknowledging receipt of petitioner's hearing request, and SO Alcorte subsequently mailed to petitioner a letter scheduling a CDP hearing for August 21, 2014. SO Alcorte's letter advised petitioner that it did not qualify for consideration of an installment agreement because it was not in compliance with its employment tax deposit requirements for the taxable period ending June 30, 2014. The letter further advised petitioner that to qualify for a collection alternative it had to provide to SO Alcorte the following items no later than August 11, 2014: (1) a completed Form 433-B, Collection Information Statement for Businesses, and (2) evidence that it had made the required Federal employment tax deposits for the current taxable

**[*5]** period. SO Alcorte informed petitioner that respondent could not consider collection alternatives without the information requested.

Petitioner did not submit the requested Form 433-B until August 20, 2014, one day before the scheduled hearing, asserting that the proposed levy would result in "economic hardship" and, therefore, "this situation * * * mandate[s] the release of the proposed levy". The Form 433-B was signed by petitioner's president, Sam Jewell, listing among petitioner's assets accounts receivable from Private Pay, Medicaid Oklahoma, Medicare, and Insurance CoPay--with a combined balance of $306,598.61 for the period April 30 through June 30, 2014.[4] The Form 433-B also listed petitioner's monthly income of $254,138.33[5] and monthly expenses of $257,176.14.

In preparation for the CDP hearing SO Alcorte noted in her case activity report that petitioner did not appear to qualify for an installment agreement because its assets were sufficient to pay the outstanding liability in full. She also noted that petitioner offered no explanation regarding how it would make its

---

[4]Petitioner listed without substantiating on its Form 433-B an account receivable from Medicare with a balance of $73,213.92.

[5]SO Alcorte's notes indicated that petitioner's monthly income was $154,138.33. This appears to be a scrivener's error, as her notes on the Form 433-B reflect $254,138. Either amount results in negative net monthly income.

[*6] proposed monthly installment agreement payments while its net revenue was negative. And she reviewed the administrative record.

The administrative record details previous installment agreements between respondent and petitioner. Each followed a similar pattern: petitioner failed to remit to the IRS the requisite employment tax deposit; petitioner would not pay the amount in full until respondent sent a final notice of intent to levy; petitioner would attempt to enter into an installment agreement; and for one reason or another, petitioner defaulted on that agreement. Detailed notes accompanying these installment agreements elaborate upon the extensive consideration given to petitioner's unique circumstances and the impact of collection action on its employees and patients. These notes also show that despite ongoing collection action by lien and by levy, petitioner was able to continuously provide sufficient care to its patients and wages to its employees.

On August 21, 2014, the parties held a CDP hearing. Petitioner's representative did not contest petitioner's underlying tax liability but instead reiterated that it would suffer economic hardship if the proposed collection action were sustained.[6] SO Alcorte explained to petitioner's representative that she

---

[6]Interestingly, the notes in petitioner's ICS history transcript indicate that it "is not going out of business and that funds will keep coming in from Medicare

(continued...)

**[*7]** would not consider petitioner's economic hardship argument because the economic hardship exception does not apply to corporations. She noted that because (1) petitioner's accounts receivable were sufficient to pay its outstanding liability in full, (2) petitioner was not in compliance with its Federal employment tax deposit obligations, and (3) the economic hardship exception is not applicable to corporations, she would be sustaining the proposed collection action and closing the case.

SO Alcorte verified that the assessment was properly made and that all other requirements of applicable law and administrative procedure had been met. She thereupon closed the case and, on September 17, 2014, issued to petitioner a notice of determination sustaining the notice of intent to levy with respect to the Form 941 tax period ending December 31, 2013.

Petitioner timely petitioned this Court with respect to the notice of determination and, on March 31, 2015, filed a motion for summary judgment. Respondent filed his motion for summary judgment on October 14, 2015. The Court has issued its Opinion in Lindsay Manor I, finding that section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid and that the circumstances of

---

⁶(...continued)
and Medicaid."

**[\*8]** nonindividual taxpayers may properly be considered under the intrusiveness analysis of the section 6330(c)(3)(C) balancing test.  The Court proceeds to address respondent's motion for summary judgment and the portion of petitioner's motion not addressed in <u>Lindsay Manor I</u>.

Discussion

I.  <u>Summary Judgment and Standard of Review</u>

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials.  <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994).  If a moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).

Upon due consideration of the parties' motions, supporting declarations, and responses thereto, the Court concludes that no material facts are in dispute and that judgment may be rendered for respondent as a matter of law.

[*9]   Where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. Sego v. Commissioner, 114 T.C. 604, 610 (2000). Where, as here, there is no dispute concerning the underlying tax liability, the Court reviews the Commissioner's administrative determination for abuse of discretion.[7] Id. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

II.    Collection Due Process

In deciding whether the SO abused her discretion in sustaining the collection action, the Court considers whether she: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

_____

[7]Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, Giamelli v. Commissioner, 129 T.C. 107, 115 (2007), and again in its petition to this Court, see Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner raised this issue neither with SO Alcorte nor in its petition. The Court accordingly deems it conceded.

**[\*10]**  Review of the record reveals that SO Alcorte conducted a thorough review of petitioner's account, determined that the taxes had been properly assessed, and verified that other requirements of applicable law and administrative procedure were followed.  Petitioner's primary contention is that SO Alcorte abused her discretion in rejecting its installment agreement request.  Secondary to this argument is that the SO abused her discretion in failing to adequately consider petitioner's "economic hardship" in the balancing analysis required by section 6330(c)(3).[8]  Finally, petitioner suggests that SO Alcorte was not impartial as required by section 6330(b)(3).

> A.    Petitioner's Installment Agreement Request

In its discretion, the IRS may accept an installment agreement if it determines that doing so will facilitate full or partial collection of a tax liability.  See sec. 6159(a).  The IRS also has discretion to reject a proposed installment agreement (subject to certain restrictions not applicable here).  See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(I), Proced. &

---

[8]In Lindsay Manor I, this Court found that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid; accordingly, the economic hardship exception applies only to individuals.  To the extent that petitioner's other arguments attempt to rehash this issue, they are summarily disregarded.  However, to the extent that petitioner seeks to point out its economic position for the sake of SO Alcorte's sec. 6330(c)(3)(C) balancing analysis, the Court will address them.

[*11] Admin. Regs.  Consequently, in reviewing this determination, the Court does not substitute its judgment for that of Appeals and decide whether in its opinion petitioner's installment agreement should have been accepted.  See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009).  Instead, the Court reviews this determination for abuse of discretion.

Petitioner argues that it was an abuse of discretion for SO Alcorte to reject its proposed installment agreement.  The record, however, supports SO Alcorte's rejection of petitioner's installment agreement as proper for either of her two reasons:  (1) the value of petitioner's assets exceeded the underlying liability, and (2) petitioner was not in compliance with its Federal employment tax deposit obligations.[9]

    1.    Petitioner's Assets

SO Alcorte rejected petitioner's proposed installment agreement after determining that its tax liability could be fully or partially satisfied by liquidating or borrowing against its assets--$306,598.61 in accounts receivable alone.  See

_____

[9]The Court finds disingenuous petitioner's argument that SO Alcorte's notes in her case activity report constituted a predetermination.  The notes indicate SO Alcorte's preparation for petitioner's CDP hearing and reflect a thorough review of the late-submitted Form 433-B and its attachments.  This is not an abuse of discretion.

**[\*12]** Internal Revenue Manual (IRM) pt. 5.14.1.4(5) and (6) (June 1, 2010) ("Taxpayers do not qualify for installment agreements if balance due accounts can be fully or partially satisfied by liquidating assets[.]"); see also Boulware v. Commissioner, T.C. Memo. 2014-80 (finding that settlement officer's reliance on this IRM provision was not an abuse of discretion), aff'd, 816 F.3d 133 (D.C. Cir. 2016). But petitioner argues that SO Alcorte should have considered its economic hardship argument.

When a taxpayer establishes in a prelevy collection hearing under section 6330 that the proposed levy would create an economic hardship, it is unreasonable for the settlement officer to determine to proceed with the levy, which section 6343(a)(1)(D) would require the IRS to immediately release. Vinatieri v. Commissioner, 133 T.C. 392, 400 (2009). Rather than proceed with the levy, the settlement officer must consider alternatives. Id. Although SO Alcorte did not consider petitioner's request for economic hardship relief, this Court held in Lindsay Manor I that section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., limiting economic hardship relief to individual taxpayers, is valid. Because the regulation is valid and because petitioner is not an individual taxpayer, SO Alcorte was not required to consider petitioner's economic hardship argument in the light

[*13] of section 6343(a)(1)(D). It was not an abuse of discretion for SO Alcorte to decline to consider an argument inapplicable to petitioner.

### 2. Compliance With Federal Tax Obligations

In rejecting petitioner's proposed installment agreement, SO Alcorte also noted that petitioner was not in compliance with its current Federal employment tax deposit obligations. The IRS' established policy is to require taxpayers to be in compliance with current filing and estimated tax payment requirements to be eligible for collection alternatives. See Reed v. Commissioner, 141 T.C. 248, 256-257 (2013). Generally, current compliance with tax laws is a prerequisite to being eligible for collection alternatives. See Cox v. Commissioner, 126 T.C. 237, 257 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008). And despite petitioner's contention, SO Alcorte was well within her discretion to require compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); cf. Christopher Cross, Inc. v. United States, 461 F.3d 610, 613 (5th Cir. 2006) (finding no abuse of discretion when settlement officer rejected collection alternative because taxpayer was not in compliance with its tax payment obligations); Reed v. Commissioner, 141 T.C. at 257 (same).

Petitioner argues that SO Alcorte abused her discretion because--even though it was not in compliance--she failed to consider that its inability to remain

[*14] current with its Federal tax deposits was a result of its nonreceipt of Medicare and Medicaid funding from the Federal and State Governments. To support its argument, petitioner cites Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178(2011).

In Alessio Azzari, Inc., a lender stopped lending money to the taxpayer after the Commissioner's settlement officer erroneously determined that the Commissioner did not need to subordinate his lien on the taxpayer's accounts to the lender's lien on the same accounts. Id. at 181-183. As a result, the taxpayer was unable to stay current with its employment tax deposits after being in compliance for six consecutive quarters. Id. at 183. The Commissioner denied the taxpayer's installment agreement request because the taxpayer was no longer in compliance. Id. at 183-184. The Court held that it was an abuse of discretion for the Commissioner to deny the taxpayer's request for an installment agreement on the basis of the taxpayer's failure to stay current on its tax deposits because the settlement officer's erroneous interpretation of law led to the lender's decision to stop lending money to the taxpayer, which led to the taxpayer's not being in compliance. Id. at 194.

Unlike the taxpayer in Alessio Azzari, Inc., there is no dispute that petitioner was not in compliance when it requested an installment agreement. And

[*15] as the Court found in <u>Lindsay Manor I</u>, section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is a valid regulation.  SO Alcorte did not interpret the law erroneously.  Accordingly, SO Alcorte did not abuse her discretion in rejecting petitioner's installment agreement request on the grounds that petitioner was not in compliance.

### B.     SO Alcorte's Balancing Analysis

Petitioner next argues that SO Alcorte either did not conduct the required statutory balancing test or did not explain her reason for concluding that its requirements were met.  Petitioner suggests that it "proposed a viable collection alternative that it could afford to pay on a monthly basis while staying current on its federal tax deposit payments that was less intrusive than enforced levy action".

This Court also found in <u>Lindsay Manor I</u> that the section 6330(c)(3)(C) balancing test properly takes into account a taxpayer's specific economic realities and the consequences of a proposed collection action.  On the basis of the Court's thorough analysis of the record in this case, the Court concludes that there is no material issue of fact regarding whether the SO properly balanced "the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  <u>See</u> sec. 6330(c)(3).

[*16]  At the time petitioner requested this installment agreement, it had defaulted on numerous previous installment agreements, several of which involved monthly payments of $6,000--the same amount it has now promised to pay.  Although petitioner has argued that a levy would render it unable to meet its payroll and patient obligations, the administrative record shows that when petitioner previously complained of being unable to meet its payroll and patient obligations because of a levy, it found the requisite funding when respondent refused to release the levy.[10]

Petitioner's Form 433-B showed that its monthly expenses exceeded its monthly income.  Although there was an ongoing dialogue between petitioner's counsel and SO Alcorte, petitioner gave no indication of how it would make the proposed installment payments with negative monthly revenue.  SO Alcorte noted the existence of petitioner's accounts receivable, which were together sufficient to pay the outstanding liabilities in full.  These accounts included delayed payments from Medicare and Medicaid, but petitioner did not suggest that they would be unpaid; rather, petitioner's counsel stated that it "is not going out of business and that funds will keep coming in from Medicare and Medicaid."

---

[10]The IRS revenue agent's notes on this method of funding can be summarized colloquially as "robbing Peter to pay Paul."

**[*17]**  Although petitioner complains of the possibility of being forced to close its doors to its patients and terminate its employees, the record in this case indicates a resilience despite its habitual noncompliance with the Internal Revenue laws.  On the basis of petitioner's consistent history of noncompliance and its continual ability to find and remit sufficient payment despite the balance sheet, this Court finds that SO Alcorte gave due weight to petitioner's specific circumstances.  The Government's interest in efficiently collecting the amounts owed by petitioner simply tipped the scale the other way.

Furthermore, it is well established that rejecting a collection alternative because of noncompliance with estimated tax payment requirements does not violate the proper balancing requirement.  See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Friedman v. Commissioner, T.C. Memo. 2015-196; Schwartz v. Commissioner, T.C. Memo. 2007-155.

In preparation for the CDP hearing SO Alcorte discovered that petitioner was not in compliance with its current employment tax deposit obligations for the taxable period ending June 30, 2014, and that it did not provide proof of its making the required September 30, 2014, deposit.  Upon consideration of petitioner's financial position and its failure to remain in compliance with its employment tax requirements, SO Alcorte determined that there was no alternative

[*18] to sustaining the notice of intent to levy, which would be less intrusive to petitioner and still allow the Government to collect its outstanding tax liability. SO Alcorte explained the reasoning behind her determination in the notice of determination. Accordingly, the undisputed material facts establish that SO Alcorte did not abuse her discretion in conducting the balancing test under section 6330(c)(3)(C).

### C. SO Alcorte's Impartiality

Next, petitioner argues that SO Alcorte's review of the documents it provided before the CDP hearing violates its section 6330(b)(3) right to a CDP hearing by an officer who had no prior involvement with respect to the unpaid tax.

Section 6330(b)(3) requires a CDP hearing to be "conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax * * * before the first hearing". Prior involvement exists only when (1) the taxpayer, the tax, and the tax period at issue in the CDP hearing also were at issue in the prior non-CDP matter and (2) the Appeals officer or employee actually participated in the prior matter. Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs.

Petitioner does not argue that SO Alcorte had prior involvement in an earlier, non-CDP matter; rather, it argues that, because she had reviewed petitioner's documents before the CDP hearing, SO Alcorte was not impartial.

**[\*19]** Petitioner is incorrect. The regulations clearly state that prior involvement exists only when an Appeals officer actually participates in an earlier, non-CDP matter. Id. Because petitioner does not assert that SO Alcorte participated in a prior non-CDP matter, its argument must fail.

SO Alcorte verified that she did not have any prior involvement with respect to the specific tax periods at issue. Because SO Alcorte did not participate in a prior non-CDP matter concerning the same tax, taxpayer, and tax period at issue, she was an eligible Appeals officer to preside over the CDP hearing. Accordingly, the undisputed material facts establish that SO Alcorte did not abuse her discretion by reviewing before petitioner's CDP hearing the information petitioner had provided.

III.    Conclusion

Petitioner finally argues that the Court should remand this case for additional consideration. The Court is not convinced it is necessary or would be productive to remand this case. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Kakeh v. Commissioner, T.C. Memo. 2015-103, at \*13. The purpose of a remand is not to afford a "do over" for a taxpayer whose missteps during the CDP process resulted in its collection alternative's being rejected. See Kakeh v.

**[*20]** <u>Commissioner</u>, at *13. It appears to the Court that petitioner is seeking a "do over" here.

Finding no abuse of discretion in any respect, the Court will grant respondent's motion for summary judgment and deny the remainder of petitioner's motion for summary judgment. The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.