SULPHUR MANOR, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Sulphur Manor v. Comm'r
Docket No. 24581-14L United States Tax Court
2017 U.S. Tax Ct. LEXIS 29; May 31, 2017, Filed
Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.
Docket No. 24581-14L. Filed May 31, 2017.
David J. Looby, for petitioner.
Ann Louise Darnold, for respondent.
MEMORANDUM OPINION
PARIS, Judge: In this collection due process (CDP) case, petitioner seeks
review pursuant to section 6330(d)(1)1 of the determination by the Internal
1Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.
- 2 -
[*2] Revenue Service (IRS or respondent) to uphold a notice of intent to levy.
Petitioner timely petitioned this Court with respect to the notice of determination,
and petitioner and respondent have each filed motions for summary judgment
under Rule 121. The remaining questions for decision are whether IRS Settlement
Officer Alcorte (SO Alcorte) abused her discretion in rejecting petitioner's
proposed installment agreement and sustaining the collection action and whether
she had prior involvement with respect to the unpaid tax. For the reasons
explained below, the Court will grant respondent's motion for summary judgment
and deny petitioner's.
Background
The following facts are based on the parties' pleadings and motion papers,
including the attached exhibits and affidavits.2 SeeRule 121(b). Petitioner oper-
ates a nursing home facility in a rural community of fewer than 5,000 residents.
Its principal place of business was in Oklahoma at the time the petition was filed.
2Each party requests that certain of the other's affidavits and exhibits be stricken from the record because they were not part of the original administrative record. Although there exists conflicting authority as to whether the Court's review in CDP cases is limited to the administrative record, neither the U.S. Court of Appeals for the Tenth Circuit nor the U.S. Court of Appeals for the D.C. Circuit has specifically ruled on the issue. The Court denies both requests.
- 3 -
[*3] The case at issue relates to petitioner's outstanding tax liability from Form
941, Employer's Quarterly Federal Tax Return, for the period ending December
31, 2013. For that period, petitioner timely filed its Form 941 but failed to pay the
reported tax liability of $88,239.49 for that quarter. On April 7, 2014, respondent
assessed the tax reported on the return and began collection efforts.
On April 18, 2014, respondent issued to petitioner a Letter 1058, Final
Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. In
response petitioner timely submitted a Form 12153, Request for a Collection Due
Process or Equivalent Hearing, seeking to enter into a $6,000-per-month
installment agreement for its unpaid employment tax liability. The CDP hearing
request stated that if respondent were permitted to levy, petitioner's difficulty with
Medicare and Medicaid collections would render it unable to pay either its
employment tax balance or its current taxes. Petitioner's CDP hearing request,
however, did not dispute the underlying employment tax liability; petitioner
checked the collection alternative boxes for "Installment Agreement" and "I
Cannot Pay Balance".
Respondent mailed petitioner a letter dated June 6, 2014, acknowledging
receipt of petitioner's CDP hearing request, and SO Alcorte subsequently mailed
to petitioner a letter scheduling a CDP hearing for August 28, 2014. SO Alcorte's
- 4 -
[*4] letter advised petitioner that it did not qualify for consideration of an
installment agreement because it was not in compliance with its employment tax
deposit requirements for the taxable period ending June 30, 2014. The letter
further advised petitioner that to qualify for a collection alternative it had to
provide to SO Alcorte the following items no later than August 12, 2014: (1) a
completed Form 433-B, Collection Information Statement for Businesses, and
(2) evidence that it had made the required Federal employment tax deposits for the
current taxable period. SO Alcorte informed petitioner that respondent could not
consider collection alternatives without the information requested.
Petitioner did not submit the requested Form 433-B until August 26, 2014,
two days before the scheduled hearing, asserting that the proposed levy would
result in "economic hardship" and, therefore, "this situation * * * mandate[s] the
release of the proposed levy". The Form 433-B was signed by petitioner's
president, Sam Jewell, and listed among petitioner's assets accounts receivable
from Private Pay, Medicaid Oklahoma, Medicare, and Insurance CoPay--with a
combined balance of $444,196.43--for the period April 30 through June 30, 2014.3
3The record reflects that $305,378.09 of petitioner's total accounts receiv-able was owed by the Federal and State Government agencies referenced above.
- 5 -
[*5] The Form 433-B also listed petitioner's monthly income of $322,941.18 and
monthly expenses of $276,793, for a net monthly income of $46,148.18.
In preparation for the CDP hearing SO Alcorte reviewed the administrative
record and noted in her case activity report that petitioner did not appear to qualify
for an installment agreement because its assets in accounts receivable were
sufficient to pay the outstanding liability in full. She noted on petitioner's Form
433-B that its net monthly income was $46,148.18.
On August 28, 2014, the parties held the scheduled CDP hearing.
Petitioner's representative did not contest petitioner's underlying tax liability but
instead reiterated that it would suffer economic hardship if the proposed collection
action were sustained. SO Alcorte explained to petitioner's representative that she
would not consider petitioner's economic hardship argument because the
economic hardship exception under section 6343(a)(1)(D) is not available to
corporations. She noted that because (1) petitioner's accounts receivable were
sufficient to pay its outstanding liability in full, (2) petitioner was not in
compliance with its Federal employment tax deposit obligations, and (3) the
economic hardship exception was unavailable to corporations, she would be
sustaining the proposed collection action and closing the case.
- 6 -
[*6] SO Alcorte verified that the assessment was properly made and that all other
requirements of applicable law and administrative procedure had been met. She
thereupon closed the case and, on September 17, 2014, issued to petitioner a
notice of determination sustaining the notice of intent to levy for its employment
tax liability for the tax period ending December 31, 2013.
Discussion
I. Summary Judgment and Standard of Review
The purpose of summary judgment is to expedite litigation and avoid
unnecessary and time-consuming trials. Fla. Peach Corp. v. Commissioner, 90
T.C. 678, 681 (1988). The Court may grant summary judgment when there is no
genuine dispute as to any material fact and a decision may be rendered as a matter
of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992),
aff'd, 17 F.3d 965 (7th Cir. 1994). If a moving party properly makes and supports
a motion for summary judgment, "an adverse party may not rest upon the mere
allegations or denials of such party's pleading" but must set forth specific facts, by
affidavit or otherwise, showing that there is a genuine dispute for trial. Rule
121(d).
- 7 -
[*7] Upon due consideration of the parties' motions, supporting declarations,
and responses thereto, the Court concludes that no material facts are in dispute and
that judgment may be rendered for respondent as a matter of law.
Where the validity of the underlying tax liability is properly at issue in a
collection case, the Court will review the matter on a de novo basis. Sego v.
Commissioner, 114 T.C. 604, 610 (2000). Where, as here, there is no dispute
concerning the underlying tax liability, the Court reviews the Commissioner's
administrative determination to proceed with collection for abuse of discretion.4
Id. Abuse of discretion exists when a determination is arbitrary, capricious, or
without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301,
320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).
II. Collection Due Process
In deciding whether the SO abused her discretion in sustaining the proposed
collection action, the Court considers whether she: (1) properly verified that the
requirements of any applicable law or administrative procedure have been met;
4Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, Giamelli v. Commissioner, 129 T.C. 107, 115 (2007), and again in its petition to this Court, seeRule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner did not raise this issue with SO Alcorte or in its petition. The Court accordingly deems it conceded.
- 8 -
[*8] (2) considered any relevant issues petitioner raised; and (3) determined
whether "any proposed collection action balances the need for the efficient
collection of taxes with the legitimate concern of * * * [petitioner] that any
collection action be no more intrusive than necessary." Seesec. 6330(c)(3).
Review of the record reveals that SO Alcorte conducted a thorough review
of petitioner's account, determined that the taxes had been properly assessed, and
verified that other requirements of applicable law and administrative procedure
were followed.
Petitioner's primary contention is that section 301.6343-1(b)(4)(i), Proced.
& Admin. Regs. (defining economic hardship only with respect to individual taxpayers), is invalid and that SO Alcorte abused her discretion in failing to consider its request for relief under the economic hardship provision of section 6343(a)(1)(D). This contention is incorrect. This Court recently released its Opinion in Lindsay Manor Nursing Home, Inc. v. Commissioner (Lindsay ManorI), 148 T.C. __ (Mar. 23, 2017), finding that section 301.6343-1(b)(4)(i), Proced.
& Admin. Regs., is valid and that the economic hardship relief provided by section 6343(a)(1)(D) is available only to individual taxpayers. And in a companion Memorandum Opinion, Lindsay Manor Nursing Home, Inc. v. Commissioner, T.C. Memo. 2017-50, the Court concluded that the SO did not abuse her discretion
- 9 -
[*9] in failing to consider a request for economic hardship relief made by a
corporate taxpayer. SO Alcorte did not abuse her discretion in declining this
request either.
Petitioner argues alternatively that SO Alcorte abused her discretion in
rejecting its installment agreement request and in failing to adequately consider its
"economic hardship" in the balancing analysis required by section 6330(c)(3).5
Finally, petitioner suggests that SO Alcorte was not impartial as required by
section 6330(b)(3).
A. Petitioner's Installment Agreement Request
In its discretion, the IRS may enter into an installment agreement if it
determines that doing so will facilitate full or partial collection of a tax liability.
Seesec. 6159(a). The IRS also has discretion to reject a proposed installment
agreement (subject to certain restrictions not applicable here). See Thompson v.
Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. &
Admin. Regs. Consequently, in reviewing this determination, the Court does not
5In Lindsay Manor I, this Court found that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid; accordingly, the economic hardship exception is available only to individuals. To the extent that petitioner's other arguments attempt to rehash this issue, they are summarily disregarded. The Court will, however, address petitioner's economic position with respect to SO Alcorte's sec. 6330(c)(3)(C) balancing analysis.
- 10 -
[*10] substitute its judgment for that of Appeals and decide whether in its opinion
petitioner's installment agreement should have been accepted. See Woodral v.
Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo.
2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009). Instead, the Court reviews
this determination for abuse of discretion.
Petitioner argues that it was an abuse of discretion for SO Alcorte to reject
its proposed installment agreement. The record, however, demonstrates that SO
Alcorte's rejection of petitioner's installment agreement was proper for either of
her reasons: (1) the value of petitioner's assets exceeded the underlying liability
and (2) petitioner was not in compliance with its Federal employment tax deposit
obligations.6
1. Petitioner's Assets
SO Alcorte rejected petitioner's proposed installment agreement after
determining that it could fully or partially satisfy its tax liability--$88,239.49--by
liquidating or borrowing against its assets--$444,196.43 in accounts receivable
6The Court finds disingenuous petitioner's argument that SO Alcorte's notes in her case activity report constituted a predetermination. The notes indicate SO Alcorte's preparation for petitioner's CDP hearing and reflect a thorough review of the late-submitted Form 433-B and its attachments. This is not an abuse of discretion.
- 11 -
[*11] alone.7 SeeInternal Revenue Manual (IRM) pt. 5.14.1.4(5) and (6) (June 1,
2010)("Taxpayers do not qualify for installment agreements if balance due
accounts can be fully or partially satisfied by liquidating assets[.]"); see also
Boulware v. Commissioner, T.C. Memo. 2014-80 (finding that settlement officer's
reliance on this IRM provision was not an abuse of discretion), aff'd, 816 F.3d 133
(D.C. Cir. 2016). And other than its argument for economic hardship relief,
petitioner does not suggest that any exception to the general rule applies. The
record does not show any abuse of discretion by SO Alcorte in rejecting this offer.
2. Compliance With Federal Tax Obligations
In rejecting petitioner's proposed installment agreement, SO Alcorte also
noted that petitioner was not in compliance with its current Federal employment
tax deposit obligations. Established IRS policy requires taxpayers to be in
7SO Alcorte noted in her case activity report that "there are enough equity in assets as well as the excess monthly income shows negative figure than proposed". And petitioner points to this as an example of SO Alcorte's abuse of discretion.
However, even assuming that the quoted sentence means that she thought petitioner's net income was negative--instead of positive $46,148.18 per month-- this mistake was of no consequence to her ultimate decision in the notice of determination, which does not mention petitioner's income. Any actual error was harmless since an accurate reflection of petitioner's positive net income would have been another reason to reject its proposed $6,000-per-month installment agreement. See Boulware v. Commissioner, T.C. Memo. 2014-80 (finding no abuse of discretion in rejecting proposed installment agreement when taxpayer was able to pay twice the amount of the proposed payments), aff'd, 816 F.3d 133 (D.C. Cir. 2016).
- 12 -
[*12] compliance with current filing and estimated tax payment requirements to be
eligible for collection alternatives. See Reed v. Commissioner, 141 T.C. 248, 256-
257 (2013). Generally, current compliance with tax laws is a prerequisite to being
eligible for collection alternatives. See Cox v. Commissioner, 126 T.C. 237, 257
(2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008). And despite
petitioner's contention, SO Alcorte was well within her discretion to require
compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C.
107, 111-112 (2007); cf. Christopher Cross, Inc. v. United States, 461 F.3d 610,
613 (5th Cir. 2006) (finding no abuse of discretion when settlement officer
rejected collection alternative because taxpayer was not in compliance with its tax
payment obligations); Reed v. Commissioner, 141 T.C. at 257 (same).
Petitioner argues that SO Alcorte abused her discretion because--even
though it was not in compliance--she failed to consider that its inability to remain
current with its Federal tax deposits was a result of its nonreceipt of Medicare and
Medicaid funding from the Federal and State Governments. For support,
petitioner cites Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178 (2011).
In Alessio Azzari, Inc., a lender stopped lending money to the taxpayer after
the Commissioner's settlement officer erroneously determined that the Commis-
sioner did not need to subordinate his lien on the taxpayer's accounts to the
- 13 -
[*13] lender's lien on the same accounts. Id. at 181-183. As a result, the taxpayer
was unable to stay current with its employment tax deposits after being in
compliance for six consecutive quarters. Id. at 183. The Commissioner denied the
taxpayer's installment agreement request because the taxpayer was no longer in
compliance. Id. at 183-184. The Court held that it was an abuse of discretion for
the Commissioner to deny the taxpayer's request for an installment agreement on
the basis of the taxpayer's failure to stay current on its tax deposits because the
settlement officer's erroneous interpretation of law led to the lender's decision to
stop lending money to the taxpayer, which led to the taxpayer's not being in
compliance. Id. at 194.
Unlike the taxpayer in Alessio Azzari, Inc., petitioner was indisputably not
in compliance when it requested an installment agreement. And because section
301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid, SO Alcorte's interpretation
was not erroneous. See Lindsay Manor I. Accordingly, SO Alcorte did not abuse
her discretion in rejecting petitioner's installment agreement request on the
grounds that petitioner was not in compliance.
B. SO Alcorte's Balancing Analysis
Petitioner next argues that SO Alcorte either did not conduct the required
statutory balancing test or did not explain her reason for concluding that its
- 14 -
[*14] requirements were met. Petitioner suggests that it "proposed a viable
collection alternative that it could afford to pay on a monthly basis while staying
current on its federal tax deposit payments that was less intrusive than enforced
levy action".
This Court also found in Lindsay Manor I that the section 6330(c)(3)(C)
balancing test properly takes into account a taxpayer's specific economic realities
and the consequences of a proposed collection action. On the basis of the Court's
thorough analysis of the record in this case, the Court concludes that there is no
material issue of fact regarding whether SO Alcorte properly balanced "the need
for the efficient collection of taxes" with the legitimate concern of petitioner that
"any collection action be no more intrusive than necessary." Seesec. 6330(c)(3).
At the time petitioner requested this installment agreement, the submitted
Form 433-B showed that its monthly income exceeded its monthly expenses with a
net monthly income of $46,148.18. SO Alcorte noted petitioner's accounts
receivable, which were together sufficient to pay the outstanding liabilities in full.
These accounts included delayed payments from Medicare and Medicaid, but
petitioner did not suggest that they would be unpaid.
Although petitioner complains of the possibility of being forced to close its
doors to its patients and employees, this Court finds that SO Alcorte gave due
- 15 -
[*15] weight to petitioner's specific circumstances. The Government's interest in
efficiently collecting petitioner's liability simply tipped the scale the other way.
Furthermore, it is well established that rejecting a collection alternative be-
cause of noncompliance with estimated tax payment requirements does not violate
the proper balancing requirement. See, e.g., Orum v. Commissioner, 123 T.C. 1
(2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Friedman v. Commissioner, T.C.
Memo. 2015-196; Schwartz v. Commissioner, T.C. Memo. 2007-155. In prepara-
tion for the CDP hearing SO Alcorte discovered that petitioner was not in compli-
ance with its current employment tax deposit obligations for the taxable period
ending June 30, 2014, and that it did not provide proof of making its required
September 30, 2014, deposit. Upon consideration of petitioner's financial position
and its failure to remain in compliance with its employment tax requirements, SO
Alcorte determined that there was no alternative to sustaining the notice of intent
to levy; she explained the reasoning behind her decision in the notice of determi-
nation. Accordingly, the undisputed material facts establish that SO Alcorte did
not abuse her discretion in conducting the section 6330(c)(3)(C) balancing test.
C. SO Alcorte's Impartiality
Next, petitioner argues that SO Alcorte's review of the documents it
provided before the CDP hearing violates its section 6330(b)(3) right to a CDP
- 16 -
[*16] hearing by an Appeals officer who had no prior involvement with respect to
the unpaid tax.
Section 6330(b)(3) requires a CDP hearing to be "conducted by an officer or
employee who has had no prior involvement with respect to the unpaid tax * * *
before the first hearing". Prior involvement exists only when (1) the taxpayer, the
tax, and the tax period at issue in the CDP hearing also were at issue in the prior
non-CDP matter and (2) the Appeals officer or employee actually participated in
the prior matter. Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs.
Petitioner does not argue that SO Alcorte had prior involvement in an
earlier, non-CDP matter; rather, it argues that, because she had reviewed
petitioner's documents before the CDP hearing, SO Alcorte was not impartial.
Petitioner is incorrect. The regulations clearly state that prior involvement means
that an Appeals officer actually participated in an earlier, non-CDP matter. Id.
Because petitioner does not assert that SO Alcorte participated in a prior non-CDP
matter, its argument must fail.
SO Alcorte verified that she had not had any prior involvement with respect
to the specific tax period at issue. Because SO Alcorte did not participate in a
prior non-CDP matter concerning the same tax, taxpayer, and tax period at issue,
she was an eligible Appeals officer to preside over the CDP hearing. Accordingly,
- 17 -
[*17] the undisputed material facts establish that SO Alcorte did not abuse her
discretion by reviewing the information petitioner had provided before its CDP
hearing.
III. Conclusion
Finally, petitioner argues that the Court should remand this case for
additional consideration. The Court is not convinced that a remand is necessary or
would be productive. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001);
Kakeh v. Commissioner, T.C. Memo. 2015-103, at *13. The purpose of a remand
is not to afford a "do over" for a taxpayer whose missteps during the CDP process
resulted in its collection alternative's being rejected. See Kakeh v. Commissioner,
at *13. It appears to the Court that petitioner is seeking a "do over" here.
Finding no abuse of discretion, the Court will grant respondent's motion for
summary judgment and deny petitioner's. The Court has considered all of the
arguments made by the parties, and to the extent they are not addressed herein,
they are considered unnecessary, moot, irrelevant, or without merit.
To reflect the foregoing,
An appropriate order and decision
will be entered.