CRESCENT MANOR, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Crescent Manor v. Comm'r
Docket No. 24582-14L United States Tax Court
2017 U.S. Tax Ct. LEXIS 28; May 31, 2017, Filed
Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.
Docket No. 24582-14L. Filed May 31, 2017.
David J. Looby, for petitioner.
Ann Louise Darnold, for respondent.
MEMORANDUM OPINION
PARIS, Judge: In this collection due process (CDP) case, petitioner seeks
review pursuant to section 6330(d)(1)1 of the determination by the Internal
1Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.
- 2 -
[*2] Revenue Service (IRS or respondent) to uphold a notice of intent to levy.
Petitioner timely petitioned this Court with respect to the notice of determination,
and petitioner and respondent have each filed motions for summary judgment
under Rule 121. The questions for decision are whether IRS Settlement Officer
Alcorte (SO Alcorte) abused her discretion in rejecting petitioner's proposed in-
stallment agreement and sustaining the collection action and whether she had prior
involvement with respect to the unpaid tax. For the reasons explained below, the
Court will grant respondent's motion for summary judgment and deny petitioner's.
Background
The following facts are based on the parties' pleadings and motion papers,
including the attached exhibits and affidavits.2 SeeRule 121(b). Petitioner oper-
ates a nursing home facility in a rural community of fewer than 2,000 residents.
Its principal place of business was in Oklahoma at the time the petition was filed.
2Each party requests that certain of the other's affidavits and exhibits be stricken from the record because they were not part of the original administrative record. Although there exists conflicting authority as to whether the Court's review in CDP cases is limited to the administrative record, neither the U.S. Court of Appeals for the Tenth Circuit nor the U.S. Court of Appeals for the D.C. Circuit has specifically ruled on the issue. The Court denies both requests.
- 3 -
[*3] Petitioner has a history of noncompliance with its Federal employment tax
obligations dating back a decade.3 On a prior occasion petitioner entered into an
installment agreement which the IRS revoked for petitioner's noncompliance with
its Federal tax filing and payment obligations. The case at issue relates to
petitioner's outstanding tax liability from Form 941, Employer's Quarterly Federal
Tax Return, for the period ending December 31, 2013.
Petitioner timely filed its Form 941 for the quarterly period ending
December 31, 2013, but failed to pay its reported tax liability of $41,439.56 for
that quarter. On April 14, 2014, respondent assessed the tax reported on the return
and began collection efforts.
On April 24, 2014, respondent issued to petitioner a Letter 1058, Final
Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. In
response petitioner timely submitted a Form 12153, Request for a Collection Due
Process or Equivalent Hearing, seeking to enter into a $6,000-per-month
installment agreement for its unpaid employment tax liability. The CDP hearing
request stated that if respondent were permitted to levy, petitioner's difficulty with
Medicare and Medicaid collections would render it unable to pay either its
3Contained within respondent's administrative file for petitioner is an Integrated Collection System history transcript. Petitioner disputes neither its authenticity nor the contents of the statements within.
- 4 -
[*4] employment tax balance or its current taxes. Petitioner's CDP hearing
request, however, did not dispute the underlying employment tax liability;
petitioner checked the collection alternative boxes for "Installment Agreement"
and "I Cannot Pay Balance".
Respondent mailed petitioner a letter dated June 6, 2014, acknowledging
receipt of petitioner's CDP hearing request, and SO Alcorte subsequently mailed
petitioner a letter scheduling a CDP hearing for August 14, 2014. SO Alcorte's
letter advised petitioner that it did not qualify for consideration of an installment
agreement because it was not in compliance with its employment tax deposit
requirements for the taxable period ending June 30, 2014. The letter further
advised petitioner that to qualify for a collection alternative it had to provide to SO
Alcorte the following items: (1) a completed Form 433-B, Collection Information
Statement for Businesses, and (2) evidence that petitioner had made the required
Federal employment tax deposits for the current taxable period. SO Alcorte
informed petitioner that collection alternatives could not be considered without the
information requested. Petitioner's counsel requested the telephone conference be
rescheduled, and SO Alcorte confirmed the new date of August 21, 2014.
Petitioner submitted the requested Form 433-B on August 1, 2014, asserting
that the proposed levy would result in "economic hardship" and, therefore, "this
- 5 -
[*5] situation * * * mandate[s] the release of the proposed levy". The Form 433-B
was signed by petitioner's president, Sam Jewell, and listed among petitioner's
assets accounts receivable from Private Pay, Medicaid Oklahoma, and Medicare--
with a combined balance of $152,712.59--for the period October 31, 2013,
through June 30, 2014.4 The Form 433-B also listed petitioner's monthly income
and expenses of $121,993.51 and $120,571.28, respectively, with a net monthly
income of $1,422.23.
In preparation for the CDP hearing SO Alcorte reviewed the administrative
record and noted in her case activity report that petitioner did not appear to qualify
for an installment agreement because its assets were sufficient to pay the out-
standing liability in full. She also noted that petitioner's proposal offered monthly
installment payments of $6,000 but offered no explanation of how it would fund
the proposed agreement when its net monthly income was only $1,422.23.
The administrative record details a previous installment agreement between
respondent and petitioner that was revoked because of noncompliance. Petitioner
attempted on multiple occasions to reenter into the installment agreement, but each
4The record reflects that $91,218.80 of petitioner's total accounts receivable was owed by the Federal and State Government agencies referenced above.
- 6 -
[*6] attempt was denied for its continued noncompliance with its Federal tax filing
and payment obligations.
On August 21, 2014, the parties held the CDP hearing. Petitioner's
representative did not contest petitioner's underlying tax liability but instead
reiterated that it would suffer economic hardship if the proposed collection action
was sustained. SO Alcorte explained that she would not consider petitioner's
economic hardship argument because the economic hardship exception under
section 6343(a)(1)(D) does not apply to corporations. She also explained that she
could not consider its proposed installment agreement to be in good faith because
petitioner's self-reported net monthly income was less than the amount of the
proposed installment payments. SO Alcorte noted that because (1) petitioner's
accounts receivable were sufficient to pay its liability in full, (2) petitioner was not
in compliance with its Federal employment tax deposit obligations, and (3) the
economic hardship exception was inapplicable to corporations, she would be
sustaining the proposed collection action and closing the case.
SO Alcorte verified that the assessment was properly made and that all other
requirements of applicable law and administrative procedure had been met. She
thereupon closed the case and, on September 17, 2014, issued to petitioner a
- 7 -
[*7] notice of determination sustaining the notice of intent to levy for petitioner's
employment tax liability for the tax period ending December 31, 2013.
Discussion
I. Summary Judgment and Standard of Review
The purpose of summary judgment is to expedite litigation and avoid
unnecessary and time-consuming trials. Fla. Peach Corp. v. Commissioner, 90
T.C. 678, 681 (1988). The Court may grant summary judgment when there is no
genuine dispute as to any material fact and a decision may be rendered as a matter
of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992),
aff'd, 17 F.3d 965 (7th Cir. 1994). If a moving party properly makes and supports
a motion for summary judgment, "an adverse party may not rest upon the mere
allegations or denials of such party's pleading" but must set forth specific facts, by
affidavit or otherwise, showing that there is a genuine dispute for trial. Rule
121(d).
Upon due consideration of the parties' motions, supporting declarations,
and responses thereto, the Court concludes that no material facts are in dispute and
that judgment may be rendered for respondent as a matter of law.
Where the validity of the underlying tax liability is properly at issue in a
collection case, the Court will review the matter on a de novo basis. Sego v.
- 8 -
[*8]Commissioner, 114 T.C. 604, 610 (2000). Where, as here, there is no dispute
concerning the underlying tax liability, the Court reviews the Commissioner's
administrative determination to proceed with collection for abuse of discretion.5
Id. Abuse of discretion exists when a determination is arbitrary, capricious, or
without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301,
320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).
II. Collection Due Process
In deciding whether the SO abused her discretion in sustaining the proposed
collection action, the Court considers whether she: (1) properly verified that the
requirements of any applicable law or administrative procedure have been met;
(2) considered any relevant issues petitioner raised; and (3) determined whether
"any proposed collection action balances the need for the efficient collection of
taxes with the legitimate concern of * * * [petitioner] that any collection action be
no more intrusive than necessary." Seesec. 6330(c)(3).
5Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, Giamelli v. Commissioner, 129 T.C. 107, 115 (2007), and again in its petition to this Court, seeRule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner did not raise this issue with SO Alcorte or in its petition. The Court accordingly deems it conceded.
- 9 -
[*9] Review of the record reveals that SO Alcorte conducted a thorough review
of petitioner's account, determined that the tax had been properly assessed, and
verified that other requirements of applicable law and administrative procedure
were followed.
Petitioner's primary contention is that section 301.6343-1(b)(4)(i), Proced.
& Admin. Regs. (defining economic hardship only with respect to individual taxpayers), is invalid and that SO Alcorte abused her discretion in failing to consider its request for relief under the economic hardship provision of section 6343(a)(1)(D). This contention is incorrect. This Court recently released its Opinion in Lindsay Manor Nursing Home, Inc. v. Commissioner (Lindsay ManorI), 148 T.C. __ (Mar. 23, 2017), finding that section 301.6343-1(b)(4)(i), Proced.
& Admin. Regs., is valid and that the economic hardship relief provided by section 6343(a)(1)(D) is available only to individual taxpayers. And in a companion Memorandum Opinion, Lindsay Manor Nursing Home, Inc. v. Commissioner, T.C. Memo. 2017-50, the Court concluded that the SO did not abuse her discretion in failing to consider a request for economic hardship relief made by a corporate taxpayer. SO Alcorte did not abuse her discretion in declining this request either.
Petitioner argues alternatively that SO Alcorte abused her discretion in rejecting its installment agreement request and in failing to adequately consider its
- 10 -
[*10] "economic hardship" in the balancing analysis required by section
6330(c)(3).6 Finally, petitioner suggests that SO Alcorte was not impartial as
required by section 6330(b)(3).
A. Petitioner's Installment Agreement Request
In its discretion, the IRS may accept an installment agreement if it
determines that doing so will facilitate full or partial collection of a tax liability.
Seesec. 6159(a). The IRS also has discretion to reject a proposed installment
agreement (subject to certain restrictions not applicable here). See Thompson v.
Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. &
Admin. Regs. Consequently, in reviewing this determination, the Court does not
substitute its judgment for that of Appeals and decide whether in its opinion
petitioner's installment agreement should have been accepted.See Woodral v.
Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo.
2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009). Instead, the Court reviews
this determination for abuse of discretion.
6In Lindsay Manor I, this Court found that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid; accordingly, the economic hardship exception is available only to individuals. To the extent that petitioner's other arguments attempt to rehash this issue, they are summarily disregarded. The Court will, however, address petitioner's economic position with respect to SO Alcorte's sec. 6330(c)(3)(C) balancing analysis.
- 11 -
[*11] Petitioner argues that it was an abuse of discretion for SO Alcorte to reject
its proposed installment agreement. The record, however, demonstrates that SO
Alcorte's rejection of petitioner's installment agreement was proper for either of
her reasons: (1) the value of petitioner's assets exceeded the underlying liability
and (2) petitioner was not in compliance with its Federal employment tax deposit
obligations.7
1. Petitioner's Assets
SO Alcorte rejected petitioner's proposed installment agreement after
determining that it could fully or partially satisfy its tax liability--$41,439.56--by
liquidating or borrowing against its assets--$152,712.59 in accounts receivable
alone. SeeInternal Revenue Manual (IRM) pt. 5.14.1.4(5) and (6) (June 1, 2010)
("Taxpayers do not qualify for installment agreements if balance due accounts can
be fully or partially satisfied by liquidating assets[.]"); see also Boulware v.
Commissioner, T.C. Memo. 2014-80 (finding that settlement officer's reliance on
this IRM provision was not an abuse of discretion), aff'd, 816 F.3d 133 (D.C. Cir.
2016). And other than its argument for economic hardship relief, petitioner does
7The Court finds disingenuous petitioner's argument that SO Alcorte's notes in her case activity report constituted a predetermination. The notes indicate SO Alcorte's preparation for petitioner's CDP hearing and reflect a thorough review of the Form 433-B and its attachments. This is not an abuse of discretion.
- 12 -
[*12] not suggest that any exception to the general rule applies. Petitioner had
defaulted on at least one previous installment agreement for noncompliance, and
the record does not show any abuse of discretion by SO Alcorte in rejecting this
offer.
2. Compliance With Federal Tax Obligations
In rejecting petitioner's proposed installment agreement, SO Alcorte also
noted that petitioner was not in compliance with its current Federal employment
tax deposit obligations. Established IRS policy requires taxpayers to be in
compliance with current filing and estimated tax payment requirements to be
eligible for collection alternatives. See Reed v. Commissioner, 141 T.C. 248, 256-
257 (2013). Generally, current compliance with tax laws is a prerequisite to being
eligible for collection alternatives. See Cox v. Commissioner, 126 T.C. 237, 257
(2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008). And despite
petitioner's contention, SO Alcorte was well within her discretion to require
compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C.
107, 111-112 (2007); cf. Christopher Cross, Inc. v. United States, 461 F.3d 610,
613 (5th Cir. 2006) (finding no abuse of discretion when settlement officer
rejected collection alternative because taxpayer was not in compliance with its tax
payment obligations); Reed v. Commissioner, 141 T.C. at 257 (same).
- 13 -
[*13] Petitioner argues that SO Alcorte abused her discretion because--even
though it was not in compliance--she failed to consider that its inability to remain
current with its Federal tax deposits was a result of its nonreceipt of Medicare and
Medicaid funding from the Federal and State Governments. For support,
petitioner cites Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178 (2011).
In Alessio Azzari, Inc., a lender stopped lending money to the taxpayer after
the Commissioner's settlement officer erroneously determined that the
Commissioner did not need to subordinate his lien on the taxpayer's accounts to
the lender's lien on the same accounts. Id. at 181-183. As a result, the taxpayer
was unable to stay current with its employment tax deposits after being in
compliance for six consecutive quarters. Id. at 183. The Commissioner denied the
taxpayer's installment agreement request because the taxpayer was no longer in
compliance. Id. at 183-184. The Court held that it was an abuse of discretion for
the Commissioner to deny the taxpayer's request for an installment agreement on
the basis of the taxpayer's failure to stay current on its tax deposits because the
settlement officer's erroneous interpretation of law led to the lender's decision to
stop lending money to the taxpayer, which led to the taxpayer's not being in
compliance. Id. at 194.
- 14 -
[*14] Unlike the taxpayer in Alessio Azzari, Inc., petitioner was indisputably not
in compliance when it requested an installment agreement. And because section
301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid, SO Alcorte's interpretation
was not erroneous. See Lindsay Manor I. Accordingly, SO Alcorte did not abuse
her discretion in rejecting petitioner's installment agreement request on the
grounds that petitioner was not in compliance.
B. SO Alcorte's Balancing Analysis
Petitioner next argues that SO Alcorte either did not conduct the required
statutory balancing test or did not explain her reason for concluding that its
requirements were met. Petitioner suggests that it "proposed a viable collection
alternative that it could afford to pay on a monthly basis while staying current on
its federal tax deposit payments that was less intrusive than enforced levy action".
This Court also found in Lindsay Manor I that the section 6330(c)(3)(C)
balancing test properly takes into account a taxpayer's specific economic realities
and the consequences of a proposed collection action. On the basis of the Court's
thorough analysis of the record in this case, the Court concludes that there is no
material issue of fact regarding whether SO Alcorte properly balanced "the need
for the efficient collection of taxes" with the legitimate concern of petitioner that
"any collection action be no more intrusive than necessary." Seesec. 6330(c)(3).
- 15 -
[*15] At the time petitioner requested this installment agreement, it had defaulted
on a previous installment agreement, and reinstatement was denied because of
noncompliance with its Federal tax filing and payment obligations. Although
petitioner has argued that a levy would render it unable to meet its payroll and
patient obligations, the administrative record shows that when petitioner
complained of being unable to meet its payroll and patient obligations because of a
levy, it found the requisite funding after respondent refused to release the levy.
Petitioner's Form 433-B showed that its monthly income exceeded its
monthly expenses for a net monthly income of $1,422.23. Although there was an
ongoing dialogue between petitioner's counsel and SO Alcorte, petitioner gave no
indication of how it would make proposed installment payments that were greater
than its monthly revenue. SO Alcorte noted petitioner's accounts receivable,
which together were sufficient to pay the outstanding liability in full. These
accounts included delayed payments from Medicare and Medicaid, but petitioner
did not suggest that they would be unpaid.
Although petitioner complains of the possibility of being forced to close its
doors to its patients and employees, the record indicates that petitioner expressed
similar concerns with its earlier installment agreement and that those concerns did
not prove true--petitioner displays resilience despite its habitual noncompliance
- 16 -
[*16] with the internal revenue laws. On the basis of petitioner's consistent
history of noncompliance and its continual ability to find and remit sufficient
payment despite the balance sheet, this Court finds that SO Alcorte gave due
weight to petitioner's specific circumstances. The Government's interest in
efficiently collecting petitioner's liability simply tipped the scale the other way.
Furthermore, it is well established that rejecting a collection alternative
because of noncompliance with estimated tax payment requirements does not
violate the proper balancing requirement. See, e.g., Orum v. Commissioner, 123
T.C. 1 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Friedman v. Commissioner,
T.C. Memo. 2015-196; Schwartz v. Commissioner, T.C. Memo. 2007-155. In
preparation for the CDP hearing SO Alcorte discovered that petitioner was not in
compliance with its current employment tax deposit obligations for the taxable
period ending June 30, 2014, and that it did not provide proof of making its
required September 30, 2014, deposit. Upon consideration of petitioner's
financial position and its failure to remain in compliance with its employment tax
requirements, SO Alcorte determined that there was no alternative to sustaining
the notice of intent to levy; she explained the reasoning behind her decision in the
notice of determination. Accordingly, the undisputed material facts establish that
- 17 -
[*17] SO Alcorte did not abuse her discretion in conducting the section
6330(c)(3)(C) balancing test.
C. SO Alcorte's Impartiality
Next, petitioner argues that SO Alcorte's review of the documents it
provided before the CDP hearing violates its section 6330(b)(3) right to a CDP
hearing by an Appeals officer who had no prior involvement with respect to the
unpaid tax.
Section 6330(b)(3) requires a CDP hearing to be "conducted by an officer or
employee who has had no prior involvement with respect to the unpaid tax * * *
before the first hearing". Prior involvement exists only when (1) the taxpayer, the
tax, and the tax period at issue in the CDP hearing also were at issue in the prior
non-CDP matter and (2) the Appeals officer or employee actually participated in
the prior matter. Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs.
Petitioner does not argue that SO Alcorte had prior involvement in an
earlier, non-CDP matter; rather, it argues that, because she had reviewed
petitioner's documents before the CDP hearing, SO Alcorte was not impartial.
Petitioner is incorrect. The regulations clearly state that prior involvement means
that an Appeals officer actually participated in an earlier, non-CDP matter. Id.
- 18 -
[*18] Because petitioner does not assert that SO Alcorte participated in a prior
non-CDP matter, its argument must fail.
SO Alcorte verified that she had not had any prior involvement with respect
to the specific tax period at issue. Because SO Alcorte did not participate in a
prior non-CDP matter concerning the same tax, taxpayer, and tax period at issue,
she was an eligible Appeals officer to preside over the CDP hearing. Accordingly,
the undisputed material facts establish that SO Alcorte did not abuse her discretion
by reviewing the information petitioner had provided before its CDP hearing.
III. Conclusion
Finally, petitioner argues that the Court should remand this case for
additional consideration. The Court is not convinced that a remand is necessary or
would be productive. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001);
Kakeh v. Commissioner, T.C. Memo. 2015-103, at *13. The purpose of a remand
is not to afford a "do over" for a taxpayer whose missteps during the CDP process
resulted in its collection alternative's being rejected. See Kakeh v. Commissioner,
at *13. It appears to the Court that petitioner is seeking a "do over" here.
Finding no abuse of discretion in any respect, the Court will grant
respondent's motion for summary judgment and deny petitioner's. The Court has
considered all of the arguments made by the parties, and to the extent they are not
- 19 -
[*19] addressed herein, they are considered unnecessary, moot, irrelevant, or
without merit.
To reflect the foregoing,
An appropriate order and decision
will be entered.